(No. 19972

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK J. DORE, Plaintiff in Error.

*Opinion filed April 17, 1930—Rehearing denied June 6, 1930.*

W. W. O'Brien, (Clyde C. Fisher, of counsel,) for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and James B. Searcy, (Edward E. Wilson, and John Holman, of counsel,) for the People.

Mr. Justice DeYoung delivered the opinion of the court:

Frank J. Dore was convicted in the criminal court of Cook county of obtaining money by means of the confidence game. He seeks a reversal of the judgment by this writ of error.

The plaintiff in error Dore resides in the village of Oak Park, in Cook county. On October 6, 1927, he opened an account at the First National Bank of Oak Park under the fictitious name of Frank J. Ebert. Shortly thereafter he began drawing checks on that account by the name of Ebert, payable to himself by his actual name, Frank J. Dore. He formerly had been employed by the Garfield State Bank, in Chicago, and he cashed the checks so drawn, usually two a day, at the latter bank. The checks, in the course of their collection, passed through the clearing house. After the plaintiff in error received the money on the checks and before they reached the First National Bank of Oak Park he would, in each instance prior to October 6, 1928, deposit money in that bank to the credit of his account under the name of Ebert to meet the checks which he had cashed.

He continued these operations for about ten months, and they aggregated upwards òf $100,000 monthly.

On Saturday, October 6, 1928, the plaintiff in error presented to the Garfield State Bank two checks, drawn as stated, one for $3970 and the other for $1660. The checks were cashed by the bank. Two days later, on Monday, the eighth day of October, he presented two like checks, one for $1610 and the other for $3740, to the same bank, and received the money upon them. On the afternoon of that day an officer of another Chicago bank sought information by telephone from the vice-president of the Garfield State Bank concerning checks drawn by the plaintiff in error, the former officer assigning as his reason for making the inquiry that these checks aroused suspicion. The president of the latter bank was informed of the inquiry, and he thereupon took into his personal custody the two checks which had been cashed for the plaintiff in error on that day. The next morning the president called at the First National Bank of Oak Park, and there examined the account of the plaintiff in error under the name of Ebert. The checks were left at the bank for collection, but neither these checks nor those cashed on October 6 were paid.

During the forenoon of the same day, October 9, the plaintiff in error appeared at the Garfield State Bank and asked to have two checks, one for $1720 and the other for $3870, cashed. The teller to whom the checks were presented informed him that the president of the bank wished to see him. An interview with the president followed during which the plaintiff in error was questioned. He first stated that he and Ebert resided at the same address, but finally admitted that Dore and Ebert were the same person. He further admitted that he had assumed the name Ebert because he operated a handbook on the races and desired to protect his family in the event of a raid or interference by the police. He explained his method of cashing checks at the Garfield State Bank and of depositing sufficient cur-

rency in the First National Bank of Oak Park to pay them before they reached that bank after passing through the clearing house.

On October 8, 1928, the plaintiff in error had to his credit in the Oak Park bank $494.53. A Christmas savings club deposit in the Garfield State Bank to the credit of himself and his wife on the same day amounted to $700. These accounts, together with $72.20 which he had on his person, he transferred to the last named bank to apply on the four checks which that bank had cashed for him on the sixth and eighth days of October. The plaintiff in error also owned certain real estate at 3936 Maypole avenue, Chicago, upon which the Garfield State Bank held a mortgage for $3000. He represented that the value of the property exceeded $20,000 and said he would convey it to secure the payment of the balance owing on the checks. The president of the bank, however, feared complications with certain insurance companies and refused to accept a conveyance of the property.

The plaintiff in error testified that prior to his removal to the village of Oak Park he kept an account in a Chicago bank under the name of Ebert; that he had also used the name in the purchase and sale of bonds; that all the checks which he had drawn in that name upon the bank in Chicago had been paid; that when he presented the checks on October 6, 1928, he did not know that he did not have, or that he would not have, sufficient money on deposit to pay them; that he cashed checks regularly at the Garfield State Bank because he had customers in the neighborhood of that bank; that his customers paid him large sums of money each day; that his arrest prevented the collection of $6000 or $7000 which his customers owed him on October 9, 1928; that he did not draw two checks instead of one each day to avoid suspicion; that he did not cash the checks at the Garfield State Bank for the purpose of defrauding it, and that the checks would have been honored if they had reached

the bank upon which they were drawn in the regular course of banking.

The indictment charged that the plaintiff in error obtained $10,980 from the Garfield State Bank on October 6, 1928, by means of the confidence game. The total specified in the indictment was the sum of the four checks presented by the plaintiff in error and cashed by the bank on the sixth and eighth days of October. His first contention is that the trial court erred in admitting evidence of the presentation of the checks on October 8 and 9, both of which were subsequent to the date on which, by the allegation of the indictment, the offense charged was committed. In a prosecution for practicing the confidence game similar transactions, both prior and subsequent to the date alleged in the indictment, may be shown to establish the intent of the person accused. (*People* v. *Levato*, 330 Ill. 498; *People* v. *Marek*, 326 id. 11; *People* v. *Mutchler*, 309 id. 207; *People* v. *Keyes*, 269 id. 173; *People* v. *Weil*, 244 id. 176). The cashing of the checks on October 6 and 8 and the presentation of the checks on October 9, were all part and parcel and a continuation of the same confidence game by which, during a considerable period, the plaintiff in error had obtained money from the bank. While every indictment must allege the commission of the offense charged on a certain date within the time fixed by law for its prosecution, yet, unless time is an essential ingredient of the offense, proof that it was committed at some time prior to the filing of the indictment and within the period prescribed by the Statute of Limitations is sufficient. (*People* v. *Kircher*, 333 Ill. 200; *People* v. *Rhodes*, 308 id. 146). The evidence to which the plaintiff in error objected was therefore admissible.

Complaint is made that the trial court erroneously refused to give to the jury the sixth and eighth instructions requested by the plaintiff in error. By the sixth refused instruction, it was sought to inform the jury that the fail-

ure of the evidence to show any motive on the part of the person accused to commit the crime charged, should be considered a circumstance in favor of his innocence. In a criminal prosecution the State is required to prove, beyond a reasonable doubt, the charge laid in the indictment, but it is not incumbent upon the State to prove the motive, if any, which induced the commission of the offense. For that reason the jury should not be informed that the failure to show a motive tends to prove that the crime was not committed. (*People* v. *Enright,* 256 Ill. 221; *People* v. *Corder,* 306 id. 264). It follows that the sixth instruction was properly refused.

The eighth refused instruction, after reciting certain facts in evidence, concluded with the statement that such facts did not constitute the crime of the confidence game. The recital of facts was incomplete, and the instruction was inapplicable to the evidence in the case. If the instruction had been given, it would have misled the jury, and hence its refusal affords the plaintiff in error no ground for complaint.

Finally, it is contended that the evidence is not sufficient to sustain the charge in the indictment. The plaintiff in error signed a fictitious name to checks and after obtaining the confidence of the bank by fraudulent means, induced it to cash those checks. The detection of the worthless character of the checks was postponed by the daily repetition of his fraudulent acts. Investigation disclosed his scheme and he makes no answer when he says that if he had not been caught the bank's loss would have been postponed, if not avoided. The loss was potential from the beginning of his fraudulent course and it became actual when he was prevented from persisting in that course.

Any scheme whereby a swindler wins the confidence of his victim and cheats him out of his money by taking advantage of the confidence reposed in him is a confidence game. (*People* v. *Singer,* 288 Ill. 113; *People* v. *Depew,*

237 id. 574). The criminal character of such a scheme is not lost because it assumes the form of a lawful business transaction. (*People* v. *Harrington,* 310 Ill. 613; *People* v. *Poole,* 310 id. 345; *People* v. *Mutchler, supra*). Every element of the charge in the indictment was established by the evidence and the conviction of the plaintiff in error was justified.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*