(No. 28553.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BRUCE BORRELLI, Plaintiff in Error.

*Opinion filed January 23, 1946.*

WM. SCOTT STEWART, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, RICHARD B. AUSTIN, and ALEXANDER J. NAPOLI, all of Chicago, of counsel,) for the People.

Per CURIAM: Plaintiff in error, Bruce Borrelli, was indicted by the grand jury of the Cook county criminal court under three separate indictments returned January 22, 1942. The three cases were numbered, respectively, 42-125, 42-126 and 42-127, and will be hereinafter so designated. In case No. 42-125 Lawrence Roche, Peter LaBarbera, John Devlin, John L. Keeshin and plaintiff in error were jointly indicted for a conspiracy entered into and formed November 28, 1941, to injure the respective persons

of John Milich, Nick Wassell, Edward Mitchell and James Malizzio, who were employed by the Keeshin Motor Express Co., Inc., as platform workers or dock hands. Devlin was never apprehended and the case as to him was stricken with leave to reinstate. In case No. 42-126, Roche, La-Barbera, Keeshin, plaintiff in error and one James Mc-Nally, otherwise called Joseph McNally, were jointly indicted for conspiracy to injure the persons of one John Gottlieb and one John Ralph Roe; and in case No. 42-127 they were charged with assault upon Gottlieb with intent to commit mayhem. As plaintiff in error was acquitted on that charge, case No. 42-127 is not before us.

Of these defendants Keeshin was the president of the Keeshin Motor Express Company, a corporation operating motor trucks for the transportation of freight throughout seventeen States. Devlin was the night superintendent of the company at its Chicago terminal. Plaintiff in error was employed by Keeshin. His position with the company, according to his testimony and that of Keeshin, was road inspector, investigator or guard. Milich, Wassell and Mitchell, as well as all other employees of the Keeshin company who were platform workers or dock hands, were members of Local 705 of the Chicago Teamsters Union. Local 710, to which the Keeshin employees did not belong, was out on strike at the time Borrelli entered Keeshin's employment on November 24, 1941; and either that same day or the next, the Keeshin dock hands held a meeting to discuss a contemplated strike on their own behalf. At this meeting Devlin, the company superintendent, was present and suggested that instead of striking, they first appoint a committee to take it up with their union and present their demands to the company. This was done. A committee of five was selected. Mitchell and Milich were members of the committee, Milich's appointment as a committee member being at the suggestion of Devlin. These five committee members, accompanied by their union

steward, called upon H. M. Gordy, the vice-president of the Keeshin company, and presented their demands. Devlin was present at the time and said to the committee, while on their way to Gordy's office, "Now you guys are going to get it." Gordy told them he would take the matter up with the company, and, in response to an inquiry from Mitchell, assured them that being on the committee would not affect their jobs. The men then went back to work and there was no further layoff or walkout at that time. A few days later, November 28, Mitchell, Milich and Wassell were each assaulted and severely beaten by plaintiff in error and told by him that they were fired and not to come back. Wassell had not been a member of the committee, but was present at the meeting when the committee was appointed. He had also, about two weeks previously, had some trouble with the foreman, Devlin, who threatened to fire him.

John Gottlieb, complaining witness in case No. 42-126, was the president of the Pioneer Motor Service, Incorporated, a competitor of the Keeshin company. Roe was his colored chauffeur. In the latter part of November, 1941, Keeshin and Gottlieb became involved in a dispute and each told the other never to speak to him again. On the night of January 6, 1942, Gottlieb, with his wife and Mrs. Leydon, a friend, after dining at Henrici's restaurant in Chicago, were driven by the chauffer, Roe, to the home of Mrs. Leydon, where she left the car. They then drove to the Gottlieb home, and as the chauffeur was holding the door and Gottlieb was helping his wife out of the car, plaintiff in error and his codefendants, who had followed in another car, assaulted Gottlieb and the chauffeur, severely beating both of them, Gottlieb's jaw being broken by a blow from Borrelli's fist.

January 15, 1942, Borrelli appeared before the grand jury and testified that Mitchell, Milich, Wassell, Gottlieb and Roe were beaten and assaulted by him at the direction

of Keeshin; that as soon as he was employed Keeshin gave him the job of slugging people; that Keeshin told him to beat up Gottlieb and gave him the names of the three employees, Mitchell, Milich and Wassell, to beat up and told him to get any help he needed and that Borrelli arranged to get Roche and LaBarbera; and that Roche, LaBarbera and McNally were with him and assisted in beating up Gottlieb and his chauffeur on January 6.

As a result of Borrelli's testimony the indictments in the three cases were returned. The State's Attorney dismissed case No. 42-125 as to Roche and LaBarbera, leaving Keeshin, Devlin and Borrelli as defendants. Keeshin was granted a separate trial and tried first. Borrelli refused to testify against him and the court directed a verdict in his favor. The remaining cases were then dismissed as to him. Borrelli was next placed on trial in case No. 42-125. He waived a jury, was found guilty by the court and sentenced to one year in jail. The other two cases against him were consolidated and submitted to the same judge upon the testimony taken in the first case so far as applicable, together with additional evidence relating to the conspiracy against Gottlieb and Roe and the assault upon Gottlieb. Borrelli was found not guilty in the mayhem case; and this case was dismissed by the State as to the other defendants. In case No. 42-126 Borrelli was found guilty and sentenced to one year in jail and to pay a fine of $1000. LaBarbera, Roche and McNally, after Borrelli was sentenced in case No. 42-126, also waived a jury in that case and by agreement with the State that case against them was submitted upon the evidence heard in the Borrelli case. They were also found guilty and each fined $100. The two cases in which Borrelli was convicted were consolidated for review and affirmed by the Appellate Court for the First District. By this writ of error Borrelli seeks to reverse the judgment of the Appellate Court.

Plaintiff in error testified in his own behalf upon the trial of case No. 42-125. He admitted the assaults and beatings by him of the three employees, Milich, Mitchell and Wassell, and defended on the ground that these assaults were in self-defense and grew out of his attempt to question them, in his capacity as investigator for the company. He denied that these assaults were the result of any conspiracy and denied the existence of any conspiracy. He testified that neither Keeshin nor Devlin nor anyone else instructed him to give these employees a beating or knew that any assaults were to take place. Over objection, a transcript of his testimony before the grand jury was admitted in evidence. Borrelli testified that his evidence before the grand jury that Keeshin gave him the names of the three employees and instructed him to give them a beating was false; that he so testified because Daniel A. Gilbert, the captain of police and chief investigator for the State's Attorney of Cook county, told him to do so and promised him in return that he would not be indicted.

Borrelli was arrested on the afternoon of January 12 and released on *habeas corpus* the next day. His testimony before the grand jury was given January 15. During the time he was in custody he was questioned at great length about the slugging of the Keeshin employees and the attack upon Gottlieb and Roe, but refused to make any statement. Considerable discussion was carried on between the plaintiff in error, the State's Attorney, the police force and the father of plaintiff in error, which resulted in the testimony of Borrelli before the grand jury. Borrelli contends his confession was the result of promises made to him, while the testimony of the investigating officers was to the effect no promises were made. This controversy covered many pages of testimony. We have read this testimony and cannot say the action of the court in admitting the confession was erroneous. It is conceded the testi-

mony of the plaintiff in error before the grand jury was not secured by threats, mistreatment or physical violence, or by the promises of any one of the investigating officers other than Gilbert.

In determining as a preliminary question whether a confession by a defendant is admissible, the court is not required to be convinced, beyond a reasonable doubt, of its voluntary character. (*People* v. *Bartz,* 342 Ill. 56.) The trial court admitted in evidence a transcript of plaintiff in error's testimony before the grand jury and we see no reason to disagree with that ruling. In our opinion there is sufficient in the facts and circumstances proved upon the preliminary hearing to show that the grand-jury testimony of plaintiff in error was induced not by any promise of Captain Gilbert, by whom he thought he had been double-crossed and of whom, it is apparent, as his counsel points out, he was suspicious, but was induced by the advice of his father, after he had been distinctly told by Gilbert that he had no authority whatever to make any promise in regard to his son. Plaintiff in error admitted the assaults. He knew that the police had knowledge of them. It is reasonable to believe that, although no promise was given him, he expected to fare better at the hands of the State's Attorney, to whom the question of his immunity from punishment would be largely committed, if he would appear and testify before the grand jury.

The court overruled, in each case, motions of plaintiff in error for a bill of particulars and to require the State to elect upon which count of the indictment it would rely. The court did not err in denying these motions. The purpose of a bill of particulars is to provide more particular averments in order to enable the defendant to understand the nature of the charges against him so that he may be prepared to make his defense. (*People* v. *Bain,* 359 Ill. 455.) Whether the prosecution shall be required to furnish a bill of particulars in a given case rests in the discre-

tion of the trial court and only a clear abuse of that discretion in the denial of a motion is error. (*People* v. *Diekelmann,* 367 Ill. 372; *People* v. *Birger,* 329 Ill. 352; *People* v. *Lloyd,* 304 Ill. 23; *People* v. *Munday,* 280 Ill. 32.) The indictment in each case was sufficiently specific to inform plaintiff in error of the criminal offense with which he was charged; and it is apparent from the record that he was not surprised or in any way injured on the trial by the failure of the State to furnish a bill of particulars.

A prosecutor is required to elect upon which count of an indictment he will rely for conviction only when the offenses charged in the different counts are actually distinct from each other and do not arise out of the same transaction. (*People* v. *Pulliam,* 352 Ill. 318.) A defendant cannot insist that he shall not be put upon trial on an indictment containing counts charging separate offenses unless it affirmatively appears that they are not parts of one and the same transaction but are separate and distinct in law and in fact. (*People* v. *Perrello,* 350 Ill. 231.) Under the rule in this State, unless the various counts of an indictment show that they do not relate to the same transaction, it will be presumed that they do. (*People* v. *Tinnell,* 385 Ill. 537.) In case No. 42-125 plaintiff in error was charged with conspiracy to injure certain employees of the Keeshin Motor Express Company. Counts 3, 4, 5 and 6, upon which the case was submitted, all relate to this one general conspiracy. In case No. 42-126 plaintiff in error was charged with conspiracy to injure Gottlieb and Roe. Counts 1 to 17, upon which this case was submitted, all relate to this one general conspiracy. The State is not required to elect where the conspiracies charged in the various counts are different parts of one conspiracy, (*People* v. *Curran,* 286 Ill. 302,) or where in the several counts separate and distinct objects of the conspiracy are alleged and the various acts which it is alleged in the several counts the accused and his coconspirators

conspired to commit are all parts of the same general conspiracy. *People* v. *Munday,* 280 Ill. 32.

It is the contention of plaintiff in error that the indictments are fatally defective and not sufficient to charge him with a criminal offense. In support of this contention counsel cite the case of *Maloney* v. *People,* 229 Ill. 593. That case, however, is not authority for such contention. The defendants in that case were, as is plaintiff in error here, indicted for conspiracy under section 46 of the Criminal Code, which provided then as it does now (Ill. Rev. Stat. 1943, chap. 38, par. 139,) : "If any two or more persons conspire or agree together * * * to injure the person, character, business or employment, or property of another, or to obtain money or other property by false pretenses, or to do any illegal act injurious to the public trade, health, morals, police or administration of public justice, or to prevent competition in the letting of any contract by the State, or the authorities of any counties, city, town or village, or to induce any person not to enter into such competition, or to commit any felony, they shall be deemed guilty of a conspiracy." As observed by this court in the *Maloney case,* section 46 is directed against conspiracies of different kinds. One kind is a conspiracy to injure the person of another. It is this kind of conspiracy with which the plaintiff in error is charged here. Another kind is a conspiracy to do an illegal act injurious to the public trade, health, morals, police or administration of public justice. The indictment in the *Maloney case* charged a conspiracy to do an illegal act injurious to public morals, the illegal act being described under a videlicit as being to threaten verbally to accuse a certain person of crime for the purpose of extorting money. This court held that a statement both of the illegal act and the character of such act which was the object of the conspiracy were essential allegations of the indictment, neither of which could be rejected as surplusage, as both entered into the substance of the descrip-

tion of the offense, and if they were inconsistent or repugnant the indictment was void; and that since to threaten, verbally, to accuse another of crime for the purpose of extorting money is not an offense injurious to the public morals, the Maloney indictment was void for repugnancy. In the indictments in the instant case there is no repugnancy. Each indictment and every count of each indictment alleges a conspiracy to injure the person of certain designated individuals. The statute provides (Ill. Rev. Stat. 1943, chap. 38, par. 139,) that if two or more persons conspire or agree together to injure the person of another, they shall be deemed guilty of a conspiracy. Every conspiracy to do an unlawful act is, at common law, an indictable offense. (*People* v. *Konkowski,* 378 Ill. 616; *People* v. *Amore,* 369 Ill. 245.) Since it must be conceded that the malicious injury of the person of another is an unlawful act at common law, the counts which conclude "contrary to law" are sufficient to charge a common-law conspiracy.

Plaintiff in error claims that after he was convicted in case No. 42-125 and acquitted in case No. 42-127, he could not again be put in jeopardy in case No. 42-126. There is no basis whatever for this claim of error. Each of these cases related to separate and distinct offenses and charged separate and distinct crimes.

Exception is also taken to the action of the trial court in refusing to admit and consider as a part of the evidence in the trial of the case the evidence taken at the preliminary hearing upon the admissibility of plaintiff in error's confession to the grand jury. The record indicates that before the hearing was commenced on this preliminary question counsel for plaintiff in error was asked by the court whether he wanted the same as a part of the trial or as a separate hearing, and at his request the hearing upon the admissibility of the confession was held as a separate proceeding, independent of the trial. After the

hearing upon the competency of the confession had been concluded and the transcript of Borrelli's testimony before the grand jury had been admitted and the trial of the case resumed, plaintiff in error offered in evidence the testimony heard upon the admissibility of the confession for the consideration of the court upon the question of the weight to be given the confession. The State resisted this offer and the court refused to grant plaintiff in error's request to consider the evidence taken at the preliminary hearing as a part of the trial upon the merits. This was entirely proper. The testimony given at the hearing upon the admissibility of the confession was no part of the trial on the merits of the case. Courts have' no right, merely because there is a trial of a case before them without a jury, to override rules of evidence in the trial of the facts. (*People* v. *Reichert*, 352 Ill. 358.) The rules as to admissibility of evidence are the same whether the trial be had with or without a jury. (*People* v. *Arendarczyk*, 367 Ill. 534.) On the hearing to determine the admissibility of plaintiff in error's confession before the grand jury the State was limited to the question of whether such confession was voluntary, and the cross-examination of plaintiff in error's witnesses was limited to that issue. On the trial, either side was entitled to call any witnesses desired to aid the court in determining the weight to be given to the confession, and the scope of the examination and cross-examination of the witnesses there was much broader and covered all relevant and material matters pertaining to the case.

We come next to the contention that the State did not prove the *corpus delicti* by proper evidence. The rule is well settled in this State that the *corpus delicti* cannot be proved by the confession of the defendant alone. (*People* v. *Davis*, 358 Ill. 617.) However, the *corpus delicti* is not required to be proved beyond a reasonable doubt by evidence *aliunde* the confession or admissions of the accused.

(*People* v. *Hoffman,* 381 Ill. 460.) Direct and positive evidence is unnecessary to the proof of the *corpus delicti.* If there is evidence of corroborating circumstances which tend to prove the *corpus delicti* and correspond with the circumstances related in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved in a given case. (*People* v. *Brown,* 379 Ill. 262; *People* v. *Henderson,* 378 Ill. 436; *People* v. *Hauck,* 362 Ill. 266; *People* v. *Nachowicz,* 340 Ill. 480.) In conspiracy cases the unlawful combination and agreement between two or more persons, that is, the conspiracy itself, and not the accomplishment of its unlawful object, is the gist of the crime and is the *corpus delicti.* (*People* v. *Drury,* 335 Ill. 539.) The existence of a conspiracy may be proved not only by direct evidence but also by inference from conduct, statements, facts and circumstances which disclose a common design on the part of the accused and others to act in pursuance of a common criminal purpose. *People* v. *Link,* 365 Ill. 266; *People* v. *Stavrakas,* 335 Ill. 570.

The essence of the crime charged against plaintiff in error in case No. 42-125 is conspiracy to injure the persons of certain named employees of the Keeshin Motor Express Company, and, in No. 42-126, conspiracy to injure the person of one John Gottlieb and one John Ralph Roe. In case No. 42-125 the evidence is that the three men beaten were employees of the Keeshin company and were members of Local Union No. 705; that a strike was in progress or threatened at the Keeshin plant; that the complaining witnesses Mitchell and Milich were members of the committee formed to wait upon the management of the Keeshin company to present their grievances.

The day on which the committee met, defendant Devlin, one of the executive officers of the Keeshin Company, said to them: "Now you guys are going to get it;" and

on the next day when Mitchell left the plant, defendants, Borrelli and Moran approached him and he was ordered into a car. Moran got behind the driver's wheel and Borrelli sat on the right with Mitchell between them. Mitchell testified, and it is not denied in this record, that Borrelli hit him in the face some twenty or thirty times and that Moran struck him repeatedly with his fist, and that when he was let out of the car Borrelli said: "Don't come back here. You don't work here any more. . * * * You see that street car up there, go on up there and take it and beat it." It is also shown that when Milich came to work a day or two after the committee had met with the Keeshin executives, Devlin, one of the defendants, walked into the office and said to him: "Say John, there is some fellows out there looking for you," and when Milich replied that he had work to do, Devlin said: "You better go out and see those. fellows." Upon reply from Milich, "Maybe I ought to take a pipe along with me," Devlin said: "You better not if you know what is good for you. Just go out there and see those fellows;" that when Milich got outside, Borrelli, Moran and others were standing together. Borrelli said to him: "Come here, I want to talk to you;" that they walked toward the gate and when they got outside the premises Milich was beaten and kicked by Borrelli and told to get out and never show up there again.

The evidence as to the assault on Wassell was that on that day he went to work at 3:45 A.M. Borrelli came to his car and tapped on the window and asked him to roll it down and then asked him who he was and walked away; that he, Wassell, got out of his car and walked around it toward the gate. He was beaten by Borrelli and told to get going and forget about this and not say anything and never come back.

It appears from the evidence that Wassell and Devlin had had some difficulty about two weeks prior, at which time Devlin threatened to discharge him. The evidence

tends strongly to indicate a preconceived plan of Devlin, Moran, Borrelli and unknown persons to injure certain employees of the Keeshin company.

The confession of Borrelli being properly admitted in evidence, the court had a right to consider the same together with other evidence offered by the State, and the complaint of insufficiency of proof cannot be sustained.

In case No. 42-126, plaintiff·in error did not testify. The evidence showed that he went to the Sherman hotel where he had Gottlieb pointed out to him by the doorman, and on the same evening, when Gottlieb and his chauffeur, Roe, drove up to the front of Gottlieb's residence, they were attacked by Borrelli, Roche and LaBarbera, who had been following the Gottlieb car in a car driven by defendant McNally.

Plaintiff in error, in his testimony before the grand jury, stated Keeshin had instructed him to give Gottlieb a beating; that he made his plans for so doing and associated with himself for that purpose, McNally, Roche and LaBarbera. Gottlieb testified that he had had a dispute with Keeshin sometime before and that the latter had threatened him by telling him he would have him "shut up,"· saying "I will take care of you."

We are of the opinion that the State proved beyond a reasonable doubt that these assaults and beatings were the result of a conspiracy between plaintiff in error and other named defendants in those cases. The question is one of fact and turns on the credibility of witnesses. This court will not, on this record, substitute its judgment for that of the trial court who heard the witnesses testify and could observe their candor and demeanor. The conviction of plaintiff in error in these cases was justified and the Appellate Court did not err in so holding. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*