THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM CUSTER, Defendant-Appellant.

(No. 71-185;

Fifth District—December 27, 1972.

*Supplemental opinion filed upon denial of rehearing May 22, 1973.*

John J. Hoban, of Belleville, for appellant.

Robert H. Rice, State's Attorney, of Belleville, (James W. Jerz and Edward N. Morris, both of Model District State's Attorneys Office, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant was indicted and tried before a jury for the crime of forgery in that he knowingly delivered a document knowing it to have been made apparently capable of defrauding another in violation of Ill. Rev. Stat. 1969, ch. 38, sec. 17—3(a)(2). The jury returned a verdict

of guilty and defendant was sentenced to a term of imprisonment of not less than two or more than fourteen years.

At the time of the occurrence in question defendant was an automobile dealer in Mascoutah, Illinois. His dealership had sold a number of automobiles to the Davies Supply Company of St. Louis. Defendant was personally acquainted with Eugene Conroy, the president of Davies Supply and had engaged in some conversation with him regarding the formation of a partnership to conduct racing car sales and racing business. Defendant stated that he and Conroy were partners in the business but Conroy denied this, saying that he had gone no further than to furnish defendant a recommendation to a British racing car concern and to permit defendant to show his name on a racing car. Defendant produced no written agreement or records to substantiate his claim of partnership.

The document in question was a promissory note dated December 22, 1969 and bearing the signature of Kenneth Wagner, a salesman for Davies Supply Company. The note was in the amount of $49,290.14. On the top margin of the note, above the line which delineated and encompassed the body of the note, was typed the name "Davies Supply." Typed into the designated space in the body of the note was the business address of the Davies Supply Company. The signature of Kenneth Wagner as maker bore no inscription or legend to indicate he was signing the note as a representative of, or in behalf of, the Davies Supply Company, it stood alone as though the liability for the note was personally his. The name of Davies Supply Company did not appear anywhere in the body of the note and the obligation of the note was merely, "I, we or either of us, promise to pay to the order of the Bank of Belleville * * *."

Kenneth Picha was called by the People and testified that on December 22, and for approximately nine months prior, he was a vice-president and loan officer of the Bank of Belleville. On December 22, 1969 the defendant came to the bank and presented the described note to him as loan officer of the bank. He, Picha, accepted the note as an obligation of the Davies Supply Company and gave credit to defendant for the face amount of the note. There was no check or other directive from the Davies Supply Company that would authorize the bank to credit the account of defendant or otherwise give him the proceeds of the note. Picha further testified that he was a personal friend of defendant, had purchased automobiles from him at dealers' cost, and visited with him on a social basis.

The defendant maintained a bank account for his automobile dealership with the First National Bank of Mascoutah. He obtained the proceeds of the promissory note by the use of two drafts which he had de-

posited with the Mascoutah bank. One of the drafts was dated December 17, 1969, payable to the order of Bill Custer (agency) in the amount of $43,297.14 and the other was dated December 9, 1969, payable to the order of Bill Custer (agency) in the amount of $5,993.00. The amount of the two drafts exactly equal the amount of the note in question. The drafts were forwarded by the Mascoutah bank to the Bank of Belleville and the proceeds of the promissory note were used in honoring the drafts.

Kenneth Wagner testified that the signature on the note was not his. He furnished a handwriting exemplar of his signature which was placed in evidence. It was markedly different from the signature on the note. He further testified that he had not authorized anyone, including defendant, to sign his name to the note. Eugene Conroy testified that the signature contained on the note was not the signature of his employee, Kenneth Wagner, that as president of Davies Supply he did not authorize Mr. Wagner to sign the note and never knew the note existed until around Easter of 1970. To his knowledge Mr. Wagner had never signed notes to the Bank of Belleville on behalf of Davies Supply. He admitted on cross-examination that he had written a letter to the Bank of Belleville on company letterhead to tell them that Mr. Wagner had authority to sign for cars. He thought this letter was written around the end of 1969. He further testified that he did not know there were notes of Davies Supply Company at the Bank of Belleville with Kenneth Wagner's name on them and that Davies Supply Company did not establish credit at the Bank of Belleville, although he personally did so.

The vice-president and cashier of the Bank of Belleville, Kenneth Oesterle, in response to defendant's subpoena produced a liability ledger of the Bank of Belleville for Davies Supply Company which showed a series of approximately twenty-five notes dating from November 19, 1968 to December 26, 1969. Included in this series was an entry for December 22, 1969 showing a new note in the amount of $49,290.14. Prior to that entry the ledger showed there was no outstanding balance due from Davies Supply Company on any of the approximately twenty-two previous notes. The same bank officer also produced a ledger card for the $49,290.14 note. It showed four payments on the note with an outstanding balance of $1,057.14. The payments on the note had been made by defendant's automobile agency, not Davies Supply Company. He also testified that to the best of his knowledge Davies Supply Company did not have an account in the Bank of Belleville in December 1969, he had no knowledge that Davies Supply Company was aware of the existence of the ledger sheet, the Bank of Belleville was never in possession of a corporate resolution from Davies Supply Company authorizing the extension of credit to the corporation, the ledger sheet

transaction could have been set up by the defendant working with Picha in the bank. He further testified that the note transaction on December 22 was not handled in the manner customary for their bank.

Defendant testified in his own behalf and denied having seen the note in question before his indictment and denied signing the name of Kenneth Wagner to the note or delivering it to Picha at the Bank of Belleville on December 22. He stated that he was in Sebring, Florida on December 22 in connection with his racing car business. He produced an airline ticket containing his signature, showing a date of issue of December 22, 1969 and a time stamp "December 22, 1969 at 1:12 P.M." when he allegedly registered for the flight to St. Louis which left Florida at 4:10 P.M. and arrived in St. Louis at about 7:00 P.M. on December 22, 1969. The defendant also produced a copy of a press release made in connection with his automobile racing business the dateline of which shows the date of December 22, 1969 and the place as Sebring, Florida. On cross-examination defendant admitted receiving credit for the amount of the note in the Bank of Mascoutah and that the credit was received because he deposited drafts in his account there. He denied receiving credit because he deposited the note with the Bank of Belleville stating they could have gotten it from Conroy. He first testified that Conroy was a partner in the automobile dealership but later changed this to say that Conroy held his (defendant's) shares as security. He stated that of the $49,290.14 deposited in his account that Davies Supply Company got credit for some of it since "Conroy" got a check in the amount of $13,000 payable to himself. Defendant testified that the $13,000 was for racing cars. He then asked for and received a recess to look up the particulars on the check but upon resumption of his testimony could only say that the check was issued in December 1969 and that it was given to Mr. Conroy to pay him for two 1968 Plymouths that came into his inventory as a trade-in. He did not produce the check.

Defendant initially contends that he was not proven guilty beyond a reasonable doubt. He states that the single issue to be determined by the jury was, "did the defendant deliver the promissory note described in the indictment to Kenneth Picha on December 22, 1969?" The argument is that the State's case must stand or fall on the basis of the testimony of Kenneth Picha and that his testimony coupled with the corroborated alibi defense of the defendant conclusively shows that the defendant could not be guilty of the offense charged and further defined in the bill of particulars. On cross-examination Picha testified to his certainty that the defendant had delivered the note in person at the bank in Belleville on the date of December 22, 1969, and no other date.

Defendant's position is that this testimony of Picha is inherently un-reliable because there would be no particular reason for Picha to re-member that defendant brought the note into the bank on December 22 since this transaction was one of many transactions Picha admitted hav-ing with defendant over a period of approximately three years and that he had accepted a number of promissory notes similar to the one in question signed by Kenneth Wagner.

Defendant's alibi testimony would, if believed, constitute a defense to the charges made against him. His testimony was that he was in Sebring, Florida in connection with his racing car business on December 22, 1969, the date Mr. Picha testified defendant had given him the note in Belleville. This he sought to corroborate with an airplane ticket and a Sebring, Florida press release, both dated December 22, 1969.

■■ But defendant is not entitled to have his alibi testimony accepted by the jury or this court as established facts. Its intrinsic worth is gathered from a consideration of many factors. It is subject to the same test of credibility as the evidence presented against him. When so examined it is found to be something less than infallible. For instance, it is possible that it was another, not defendant, who took the trip in question, utilized the airplane ticket and issued the press release. Although defendant stated he was in the company of the racing director of the race track, the testimony of the director was not offered. Also, the airplane ticket could have been purchased and signed by the defendant and left with another to have time stamped at 1:12 P.M. But a more plausible explanation of the transaction is found in defendant's own testimony on cross-examina-tion when he stated that the note could have been given to Picha the Friday night prior to going to Sebring for use at the bank Monday morning, December 22 and that it could have been a transaction of the previous Friday night when the items would have been dated for Mon-day business. Possibilities of this nature are numerous and we need not further speculate here. It was for the jury to consider such factors.

■■ In sum we think that any question regarding the time of delivery of the note and the person who delivered it is properly resolved by a consideration of the weight and credibility of the evidence. Coupled with the questions surrounding defendant's alibi and his admission that the items could have been prepared on the Friday prior to Monday, Decem-ber 22, was defendant's vagueness and inconsistency upon cross-examina-tion. When all factors are considered we cannot say that the verdict of guilty returned by the jury was against the manifest weight of the evi-dence. It is their peculiar province to make this determination and we feel that their verdict is amply supported by the record and that their

obvious disbelief of defendant's alibi testimony and evidence was, under the circumstances, reasonable, and we are not disposed to overturn it here.

■■ Defendant next contends that it was error for the court to permit the State to place in evidence the two drafts defendant had deposited in the Mascoutah bank, People's exhibits 4 and 5. Prior to trial defendant had moved to compel disclosure of all evidence favorable to him and in control of the prosecution. The People's answer to the motion was that they were in possession of no such evidence. Trial was held prior to the effective date of Supreme Court Rule 412 (Ill. Rev. Stat., ch. 110A, sec. 412) governing disclosure in criminal cases but defendant relies on *People v. Tribbett*, 90 Ill.App.2d 296, 232 N.E.2d 523. We think defendant's argument is not well taken and that a discussion of the applicability of *Tribbett* and other similar authorities is unnecessary. The drafts were patently not evidence that would be considered favorable to defendant since they constituted an integral part of defendant's plan to obtain and withdraw the $49,290.14 from the Bank of Belleville. Accordingly the motion did not call for disclosure of the drafts since they were not evidence favorable to defendant. In any event, defendant is in no position to claim surprise or prejudice since the drafts were admittedly of his own making and he certainly knew of their existence and availability. The court properly exercised its discretion in admitting the notes into evidence in the absence of proper objection to them.

■■ Of a somewhat similar vein is defendant's argument that the court erred in failing to restrict the State's evidence to the bill of particulars. This has reference to the court permitting admission into evidence of People's exhibits 4 and 5 and permitting the State's Attorney to question the defendant relative to the possibility of having taken the note to the bank on some date other than December 22. This argument, too, is not well taken. While it is true that the bill of particulars made no mention of the drafts and indicated that the date of the offense was the date on the note, this did not preclude consideration of the evidence, coming as it did, upon cross-examination and as part of the State's rebuttal to defendant's alibi. It was properly considered with relation to the credibility and worthiness of defendant's alibi testimony, and was not part of the State's case in chief. But even so, the stating of the date of the offense in the indictment and the bill of particulars in this case would not necessarily preclude the State from offering proof that the offense was in fact committed on a silghtly different date. The purpose of a bill of particulars is to provide more particular averments in order to enable the defendant to understand the nature of the charges against him or to prepare his defense. (*People v. Borrelli*, 392 Ill. 481, 64 N.E.2d

719.) Proof of the precise date of commission of an offense as alleged in an indictment is unnecessary, unless the allegation of a special time is an essential ingredient of the crime or the running of the period of limitations. (*People v. Taylor*, 391 Ill. 11, 62 N.E.2d 683; *People v. Dore*, 339 Ill. 415, 171 N.E. 554.) The date of December 22, 1969 was not an essential ingredient of the crime and it was therefore proper for the State to show that the crime could have occurred on a date other than that contained in the note. The only evidence regarding an alternate date for the offense was elicited from the defendant himself on cross-examination and he accordingly had no reason for complaint.

■■ The defendant also points to alleged error of the court in refusing his instruction on alibi. However, this argument is met by *People v. Poe*, 48 Ill.2d 506, 272 N.E.2d 28, in which the court reiterated its position taken in I.P.I., Criminal, No. 24.05, that no instruction be given on alibi because it is not an affirmative defense.

The defendant's final point is that the court erred in denying the defendant's post trial motion based upon the "newly discovered evidence" shown by the affidavits of defendant's wife and a handwriting expert. The argument is without merit. The affidavit of defendant's wife stated that she signed the name of Kenneth Wagner to several blank notes in the presence of Mr. Picha and affidavits of the handwriting expert state that the signature of Kenneth Wagner on the note in question was in the handwriting of defendant's wife and was not made by defendant.

■■■ It has long been established that a court will consider newly discovered evidence as a possible basis for a new trial only if that evidence could not have been discovered before the trial by the exercise of due diligence. (*People v. Dukes*, 19 Ill.2d 532, 169 N.E.2d 84.) It has also been held that a new trial is not warranted if the defendant is, at the time of the trial, in possession of the evidence urged as grounds for the new trial. (*People v. Levine*, 342 Ill. 353, 174 N.E. 378.) It appears from the face of the three affidavits supporting defendant's motion for new trial based on newly discovered evidence that defendant's wife offered prior to the trial to testify but her offer was rejected by defendant because she might subject herself to prosecution. Further, that the handwriting expert had a copy of the note in question a month before the trial for purposes of making handwriting comparisons but defendant failed or neglected to have him testify at the trial and offered no statement or explanation for his absence. In a motion for new trial based upon newly discovered evidence the defendant has the burden of rebutting the presumption that the verdict was correct. (*People v. Spears*, 70 Ill. App.2d 424, 217 N.E.2d 813.) From a consideration of the affidavits submitted here we find that defendant has failed to meet that burden.

For the foregoing reasons the judgment of the trial court will be affirmed.

Affirmed.

G. MORAN, P. J., and EBERSPACHER, J., concur.

### SUPPLEMENTAL OPINION UPON
### DENIAL OF PETITION FOR REHEARING

Mr. JUSTICE JONES delivered the opinion of the court:

The opinion in this case was filed December 27, 1972. On January 1, 1973 the new Unified Code of Corrections (Ill. Rev. Stat., ch. 38, sec. 1001—1—1 *et seq.*) became effective. Thereafter, but within the time established by the applicable Supreme Court Rule, the defendant filed his petition for rehearing.

■■ At the time defendant filed his petition for rehearing this court's mandate had not issued and the time for filing a petition for leave to appeal to the Supreme Court had not expired. Accordingly, the decision of this court had not become a final adjudication, the appeal was still pending, and we retain jurisdiction to alter or modify our decision. See the supplemental opinion on rehearing in *People v. McCloskey*, 2 Ill. App.3d 892, 274 N.E.2d 358. Although the additional supplemental opinion in *McCloskey* apparently made dicta of its supplemental opinion on rehearing we think the reasoning sound and adopt it here.

■■ Under the authority of *People v. Shadowens*, 10 Ill.App.3d 450, 294 N.E.2d 107 and *People v. Hendrickson* (1973), 11 Ill.App.3d 219, the sentence imposed in this case should be in conformity with the Unified Code of Corrections. Since forgery is a Class 3 felony punishable by a sentence of one to ten years and sec. 5—8—1 of the Code provides for a minimum term of one year unless certain findings are made by the court, and since art. 3 of the Code provides for certain pre-sentence procedures, it is necessary that this case be remanded to the trial court for the requisite hearings and imposition of a sentence in conformity with the requirements of the Code.

In all other respects defendant's petition for rehearing is denied.

Petition for rehearing denied. Cause remanded for resentencing.

EBERSPACHER and G. MORAN, JJ., concur.