THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES W. WILLIAMS, JR., Defendant-Appellant.

Fourth District    No. 16220

Opinion filed November 12, 1980.

James Patrick Newcomb, of Delano Law Offices, P. C., of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield, for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Justice is a two-way street.

We hold today that discovery from a defendant to the State may be ordered in a nonfelony case by a trial judge in the exercise of the court's inherent discretionary power.

Here are the facts. Defendant Williams was issued traffic tickets for two petty offenses—disobeying a stop sign and speeding. He filed a discovery motion seeking, *inter alia,* the names of witnesses the State expected to call at trial, pursuant to section 114—9 of the Criminal Code of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—9). The State complied with that motion and then requested certain discovery from defendant, one item of which was a list of the defendant's witnesses. The trial court granted the State's discovery motion, but the defendant's attorney refused to comply with the order. Thereupon the attorney was found in contempt of court and fined $10. This appeal ensued.

We affirm.

The Supreme Court Rules governing discovery are explicitly made applicable only to felonies. (Supreme Court Rule 411, 73 Ill. 2d R. 411.) Thus, if this had been a felony prosecution, Rule 413(d)(i) (73 Ill. 2d R. 413(d)(i)) would clearly have empowered the court to order the defendant to disclose his witnesses. But it was decided in *People v. Schmidt* (1974), 56 Ill. 2d 572, 309 N.E.2d 557, that the discovery rules are inapplicable in a misdemeanor prosecution. The parties agree that the rules also are inapplicable in a petty offense case. The State and the defendant disagree, however, over whether the trial judge had the discretionary power to order discovery, and each contends that *Schmidt* supports its position.

In *Schmidt,* the defendant, charged with a misdemeanor, sought discovery of various police and test reports. Though supplying the defendant's alcohol-influence report and a video-tape of the defendant at the police station, the State refused to disclose a driving-while-intoxicated report. The trial court ordered disclosure, and when the prosecutor refused, the court ordered the information in the report excluded from the evidence at trial.

The *Schmidt* court explained the background of the court's discovery rules:

> "Substantial variations in the scope of discovery permitted among the several circuits and even among judges in the same circuits prompted this court to appoint a committee of experienced

lawyers and judges for the purpose of formulating criminal discovery rules for consideration by us. * * * Among the factors motivating the decision to restrict application of the rules to cases in which a penitentiary sentence was possible was our awareness of the very substantial volume of less serious cases and the impact upon their expeditious disposition of the expanded discovery provided by the new rules. A second consideration in reaching our conclusion was our desire to eliminate, so far as feasible, substantial variances in the scope of discovery permitted in the courts of this State. To now hold, as defendant urges we do, that the trial judges have discretion to apply our criminal discovery rules to less serious offenses would renew in those cases the very problems we sought to eliminate in the more serious cases." 56 Ill. 2d 572, 574-75, 309 N.E.2d 557, 558.

The defendant argues that if a trial court is allowed the discretion to grant discovery in a petty offense case, the circuit courts will not be uniform in the amount of discovery they allow, and they will thus recreate the problem the discovery rules, and their limitation to felonies, sought to eliminate.

The State, on the other hand, calls attention to a different part of *Schmidt*. While denying the defendant the discovery she sought, the court pointed out that, even as a misdemeanor defendant, she had considerable discovery available to her: a list of the State's witnesses, any confessions by the defendant, evidence negating her guilt, and the results of the breathalizer test. In addition, she would be able to get the DWI report for purposes of impeachment. The court concluded:

"At the time of adoption of the 1971 rules we believed adequate for the lesser offenses the discovery provided by case law and statute, and we see no reason to depart from that view now." 56 Ill. 2d 572, 575, 309 N.E.2d 557, 558.

A careful reading of *Schmidt* reveals that the language which the defendant cites as depriving trial courts of any discretion to order discovery is limited only to the question of whether a trial court has the discretion to use the supreme court discovery rules themselves. *Schmidt* does not address the question presented to us today: whether a trial court has an inherent discretionary authority to order discovery in a nonfelony case.

The other cases cited by the defendant are inapplicable for this same reason. In *People v. Ramshaw* (1979), 75 Ill. App. 3d 123, 394 N.E.2d 21, the State sought discovery of the defendant's witness list in a misdemeanor prosecution. The court observed that the trial court had no statutory authority to order discovery in such a case and said that *Schmidt* precluded a trial court from applying the discovery rules. Thus, said the

court, the trial court was improper in excluding testimony of witnesses whose names the defendant had not provided to the State before trial. *Ramshaw,* like *Schmidt,* was concerned with whether a trial court has the discretionary power to apply the supreme court discovery rules; it did not discuss the issue of whether a trial court has an inherent discretionary power to order discovery in a nonfelony case. *People v. Petru* (1977), 52 Ill. App. 3d 676, 367 N.E.2d 980, cited by the defendant, is inapplicable here because it, too, dealt with whether the supreme court discovery rules themselves could be used in a nonfelony case.

The defendant urges a reading of *Schmidt* that is clearly too narrow. As quoted above, the *Schmidt* court specifically said that discovery provided by case law and statute is available in a nonfelony case. *Schmidt, Ramshaw,* and *Petru* were concerned only with whether statutory law authorized certain discovery. We concede that the discovery sought here is not authorized by statute. We find, however, that it is authorized by case law.

At the time the discovery rules were adopted in 1971, this court had spoken clearly on the issue of a trial court's inherent power to order discovery in a criminal case. In *People v. Endress* (1969), 106 Ill. App. 2d 217, 222, 245 N.E.2d 26, 29, we said, "[A] trial court has the inherent authority, in appropriate cases, to order pretrial discovery of items of physical evidence which the prosecution will introduce at the trial." (See also *People v. Crawford* (1969), 114 Ill. App. 2d 230, 252 N.E.2d 483.) That assertion was based upon our decision in *People v. Tribbett* (1967), 90 Ill. App. 2d 296, 301-02, 232 N.E.2d 523, 526, in which we said:

> "[A] trial is a contest held just once between well prepared adversaries of roughly equal strength. This necessarily implies that neither side has an unjust advantage over the other. Thus, in determining whether or not there should be disclosure, we should ask ourselves whether or not such would avoid an unjust advantage, or to phrase it the other way, remove an unjust disadvantage. * * * [W]e are not speaking of advantages or disadvantages as to which nothing can be done. * * * Surprise negates equality and without that rough equality, a criminal trial will not produce the desired result, which is, to put it succinctly, to discover so far as human agencies can, whether a defendant is guilty or not guilty."

Our decisions in *Tribbett* and *Endress,* taken together, thus make it clear that, prior to the adoption of the discovery rules, a trial court had the inherent authority to order discovery that would "remove an unjust disadvantage" from a party. This inherent power resided in the court for the purpose of seeing that the criminal trial process is fair and achieves its goal of ascertaining the truth.

■■ We do not see the adoption of the discovery rules as in any way

detracting from this inherent power. Indeed, *Schmidt's* statement that the case law allowing discovery before 1971 should apply to nonfelony cases is strong authority that the principles announced in *Tribbett* and *Endress* are to remain in full effect. In this regard, we note that Federal trial courts have held that the adoption of the discovery provisions in the Federal Rules of Criminal Procedure did not supplant a court's inherent power to permit discovery not provided for in the rules. (*United States v. Bender* (C.D. Cal. 1971), 331 F. Supp. 1074 (ordering physical examination of defendant whose condition is in controversy); *United States v. Taylor* (E.D.N.Y. 1960), 25 F.R.D. 225 (allowing defendant to inspect alleged narcotic drug held by the prosecution).) Thus, trial courts continue to have an inherent power to order discovery that will assure a fair trial and the ascertainment of truth.

But now, a *caveat*. By this decision, we do not say that trial courts are free to order any discovery that any litigant in a nonfelony case requests. The threshold task for a trial court is to determine whether granting a particular discovery motion is necessary to assure a fair trial and the ascertainment of truth. Only if the discovery would achieve that purpose does the court then have the discretion to allow it.

We agree with the view expressed in *Schmidt* that allowing discovery in nonfelony cases will put some burden on the trial courts. However, the ultimate benefits of the discovery we allow today far outweigh the burden that discovery requests may place upon our trial courts.

The *Schmidt* court also expressed concern that if the trial courts are allowed to apply the discovery rules in nonfelony cases, the amount of discovery allowed will vary from one judge to the next. That problem, however, is not so serious if the trial courts have discretion to order discovery only to assure a fair trial and the ascertainment of truth, rather than discretion to order any and all discovery provided for in the discovery rules. Though various judges' perceptions may differ as to what is necessary to assure a fair trial and to ascertain the truth, we think that case law in the appellate court will soon provide guidance on that issue, thus avoiding the inconsistencies feared in *Schmidt*.

We are aware that in *Tribbett* and *Endress* we were allowing discovery in a defendant's favor whereas here the State is seeking discovery. However, our concern for a fair trial and the elimination of unfair surprise and unjust advantages is just as strong with regard to the State as it is concerning a defendant. It is not our role to assure fairness for only a defendant. Justice must be evenly administered. The State also has an important interest, which the courts must protect when necessary, in participating in a fair trial. (See generally *People v. Young* (1980), 82 Ill. 2d 234, 412 N.E.2d 501; *People v. Middleton* (1976), 38 Ill. App. 3d 984,

350 N.E.2d 223; *People v. Sanders* (1969), 110 Ill. App. 2d 85, 249 N.E.2d 124.) We therefore reject the view, recently expressed by our colleagues in the Third District, that *Schmidt* allows discovery only in favor of a defendant in a nonfelony case. (*County of Peoria v. Schielein* (1980), 87 Ill. App. 3d 14, 409 N.E.2d 86.) In *Singer v. United States* (1965), 380 U.S. 24, 13 L. Ed. 2d 630, 85 S. Ct. 783, the United States Supreme Court upheld the validity of Federal Rule of Criminal Procedure 23(a), which conditions a defendant's waiver of jury trial on the prosecution's also consenting to a bench trial. The court said:

> "The Constitution recognizes an adversary system as the proper method of determining guilt, and the Government, as litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result." 380 U.S. 24, 36, 13 L. Ed. 2d 630, 638, 85 S. Ct. 783, 790.

In *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090, the court required that presidential tapes be turned over to the Watergate special prosecutor. The court stated one reason for that ruling as follows:

> "The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. * * * To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense." (418 U.S. 683, 709, 41 L. Ed. 2d 1039, 1064, 94 S. Ct. 3090, 3108.)

Thus, the court at least implicitly recognized that the prosecution has an interest, cognizable in the courts, in obtaining information that will lead to a proper functioning of the adversary process.

With regard to the specific facts of this case, we think that a defendant's witness list can be vital to the achievement of a fair trial and the ascertainment of truth. It may allow the prosecution to determine, on the one hand, that the defendant's witnesses are credible and that witnesses on whom the prosecution had expected to rely were intending to perjure themselves. On the other hand, the prosecution may learn, by interviewing and investigating defense witnesses prior to trial, that they are going to testify falsely at trial. The prosecution can then prepare for such testimony—all to the end of a fair trial and the ascertainment of truth. See *Williams v. Florida* (1970), 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (Burger, C. J., concurring).

■ We hold, therefore, that the trial court's order requiring the defendant to disclose his witness list was not an abuse of discretion. The

defendant's attorney has not seriously contended on appeal that the sanction imposed was improper. We therefore affirm the trial court's finding of contempt.

Affirmed.

CRAVEN and GREEN, JJ., concur.