RALPH WHITNEY, ALIAS WINSTON, v. THE STATE.

No. 2205. Decided June 12, 1901.

**1.—Grand Jury—Race Discrimination—Equal Protection of the Law.**

If a negro, upon the trial, attacks the selection of the grand jury, which indicted him, upon the ground that in its selection and formation unjust discrimination was exercised against his race, and that he was thereby deprived of equal protection of the law, the burden is upon him to show such discrimination.

**2.—Same.**

On the issue of race discrimination, a negro on trial is not entitled, under

the law, to such representation on the grand jury as the pro rata of the negro race of the county bears to the pro rata of the white race in said county.

**3.—Same—Constitutional Law—The Fourteenth Amendment to United States Constitution.**

It was never intended by the fourteenth amendment to the Constitution of the United States to guarantee a negro defendant a full negro grand jury nor any particular number of grand jurors; but the intention was to prevent the intentional exclusion of negroes from the grand jury solely because of their race or color and thus deny an equal protection of law, in a criminal prosecution, of a person of the African race.

**4.—Petit Jury—Race Discrimination.**

Where a negro is upon trial it is no discrimination against his race that three negroes, who were upon the panel to try defendant, were peremptorily challenged by the State.

Appeal from the Criminal District Court of Harris. Tried below before Hon. A. C. Allen.

Appeal from a conviction of rape; penalty, ten years imprisonment in the penitentiary.

This is the second appeal in this case. See Whitney v. State, 42 Texas Criminal Reports, 283.

No statement of the case required.

*L. S. Fawcett,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of rape, and his punishment assessed at ten years confinement in the penitentiary.

This case was reversed at a former term because, in the opinion of this court, the trial court, in the formation of the grand jury which presented the bill of indictment, discriminated against appellant, and also because the court failed to delay the case in order to enable him to present evidence that the court discriminated against appellant in the special venire summoned to try his case. 42 Texas Crim. Rep., 283, 1 Texas Ct. Rep., 172. It appears that, in accordance with the mandate of this court, the former indictment was quashed or dismissed in the lower court, and a new indictment was found by a new grand jury. Appellant made a motion to quash the last named indictment on the ground that he was a negro, and was discriminated against in the formation of the grand jury, negroes being intentionally excluded therefrom. The court heard the evidence upon this motion, and overruled the same, to which action of the court appellant excepted. The record shows that the district judge, after selecting the jury commissioners, instructed them with reference to their duties. He told them that it would not be proper, in the selection of juries, to discriminate against any class of citizens possessing qualifications for jurors. The court, however, gave the jury no rule or direction about the representation of any particular class or races of citizens on the jury. Two of the jury commissioners testified that they selected jurors without bias or preju-

dice, and gave the negroes what, in their opinion, was a fair representation on the jury; that out of the sixteen they selected two negroes, which they deemed a fair proportion, in accordance with the fitness of the races for representation on the grand jury. Our Constitution requires that the grand jury be constituted of only twelve; and, out of this sixteen, twelve were selected, two of whom were negroes. It was shown by one of these commissioners that, in his opinion, about one-sixth of the population of Harris County consisted of negroes. It is shown that these commissioners exercised proper care in selecting the grand jury, and that they did not discriminate against the negro or any other race; that, in the opinion of both commissioners, negroes were given a fair representation, according to population and qualifications, on the grand jury. Another witness, C. N. Lon, testified that Harris County has a population of from seventy to seventy-five thousand, two-thirds white and one-third colored or African; if every one but negroes were counted as white, then there would not be quite one-third African; that 12 to 15 per cent of the colored population was qualified for grand jury service. This is, in substance, about all the testimony introduced. We take it, from appellant's brief, that he insists that the burden is on the State to show, where this question is raised, that the negro race was not discriminated against in the formation of the grand jury. In our opinion the burden is on appellant to show that the negro race was discriminated against in the formation of said grand jury. We further understand appellant to insist, "that the negro race is, under the law, entitled to such representation on the grand jury of a county as the pro rata of its qualified jurors bears to the pro rata of the qualified jurors of the white race in said county." We do not believe that an inspection of the cases decided by the Supreme Court of the United States, which involve this question, from Virginia v. Rives, 100 United States, 313, to and including Carter v. State, 177 United States, 442, the last utterance on the subject, supports the view contended for by appellant's counsel. It is not a question as to the right of a negro or of any number of negroes to sit on a grand jury that the fourteenth amendment to the Constitution of the United States was intended to provide for; but it was intended, where a negro was on trial, to prevent discrimination against the negro race in the formation of the grand jury, which presented the indictment; and only in case negroes are intentionally excluded from the jury is he denied the equal protection of the laws. It was never intended by the fourteenth amendment to guarantee a negro defendant a full negro grand jury, nor to guarantee him any particular number of grand jurors; but it was intended to prevent their intentional exclusion from the grand jury. As was said in Carter v. Texas, 177 United States, 442, "that whenever by any action of a State, whether through its Legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded solely because of their race or color from serving as grand jurors in a criminal prosecution of a person of the African race, the equal protection of the laws is denied to

him, contrary to the fourteenth amendment to the Constitution of the United States." If the rule insisted on by appellant, to the effect that negro jurors must be impaneled in exact proportion to the pro rata of such qualified jurors to qualified jurors of the white race in the given locality, then it would often involve a very nice mathematical problem, and would require annual, instead of decennial, rounds of the census taker. Even if this test is adopted (if it is true, as testified to by one of the jury commissioners), then the negro race had its mathematical representation on the grand jury; for it is shown that two negroes out of twelve were impaneled on the grand jury, and that the negroes number about one-sixth of the population of Harris County. But take it that the number, according to the testimony of another witness, was one-third, whereas only one-sixth of the grand jury was composed of negroes, would it follow that on this account negroes were discriminated against? As we understand it and our statute requires, grand jurors are selected according to their qualifications. They are chosen on account of their intelligence and fitness for the peculiar duties which they are to discharge. We take it, considering the two populations, if the negroes number one-third and the whites two-thirds, that a selection of one-sixth out of a jury of twelve would be a large allowance, when the peculiar fitness for service on the grand jury of the two races is considered. At any rate, we fail to see from this record wherein there was any discrimination against the negro race in the selection of the grand jury which presented the bill of indictment against defendant.

We do not understand that any motion was made on the part of appellant to quash or abate the special venire summoned to try the case. It appears in the motion for new trial that there were three negroes on the panel to try defendant, and these were peremptorily challenged by the State. This, under our statute, the State had a perfect right to do without assigning any reason; nor do we understand that this could be construed into any discrimination against the negro race. To so hold would be equivalent to guaranteeing a negro defendant a certain number of negroes on the jury to try him. We do not understand this to be the construction of the fourteenth amendment by the Supreme Court of the United States.

It is not necessary to discuss any other matters. We have examined the record carefully, and it fully supports the conviction. The judgment is affirmed.

*Affirmed.*