(No. 35375.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES DUKES, Plaintiff in Error.

*Opinion filed May 18, 1960—Rehearing denied September 26, 1960.*

CHARLES R. BELLOWS, and JASON ERNEST BELLOWS, both of Chicago, (SHERMAN C. MAGIDSON, of counsel,) for plaintiff in error.

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, and JIM D. KEEHNER, Assistant Attorneys General, and FRANCIS X. RILEY, and JAMES J. GLASSER, Assistant State's Attorneys, of counsel,) for the People.

Per CURIAM: James Dukes, referred to herein as defendant, was tried by jury in the criminal court of Cook County for the murder of John Blyth, a Chicago police officer. He was found guilty, and punishment was fixed at death. For errors occurring at the trial we reversed that judgment and remanded the cause for a new trial. (*People v. Dukes,* 12 Ill.2d 334.) He was again tried for the same crime, again convicted, and once more sentenced to death. A writ of error has been issued to review this judgment. Defendant contends on this writ of error that the evidence was insufficient to establish his guilt beyond a reasonable doubt, that the trial court improperly denied a motion for a new trial based on newly discovered evidence, that the trial court erred in refusing to give certain instructions and that defendant was deprived of due process of law and the equal protection of the laws by reason of an alleged systematic exclusion of Negroes from the jury.

The crime with which defendant was charged took

place shortly after midnight in the vicinity of West 47th Street and South Wells Street in the city of Chicago. Forty-seventh Street runs east and west and Wells Street runs north and south and intersects 47th Street. The New Mount Calvary Missionary Baptist Church is situated at the southwest corner of this intersection. The State's evidence established the following facts. On the night of the crime the Reverend Jesse James Butcher, pastor of the church, and several members of the church, including Thomas Sylvester and Charles Liggons, were decorating the church. At about 12:20 A.M. they heard a woman screaming and went outside to investigate and saw a man, identified as defendant, beating a woman. Sylvester asked him to move away as he was disturbing the work in the church. An argument ensued and defendant drew a gun and shot Sylvester and then fired two more shots, one of which struck Liggons. After the shooting defendant and the woman ran across the street.

Two police officers, John Blyth and Daniel Rolewicz, who had been patrolling the neighborhood, heard the shots while they were standing on the corner of 47th Street and Wentworth Street, one block to the east of Wells Street. They proceeded on foot west on 47th Street toward Wells Street with Blyth on the south side of the street and Rolewicz on the north side and with Rolewicz about fifty feet ahead of Blyth. When Rolewicz reached the building at 216 47th Street he saw defendant run north across 47th Street to a point just ahead of Rolewicz. Rolewicz noticed that defendant had one hand under his vest and he shouted at defendant, "Police officer. What do you have there?" Without a reply defendant drew a gun from under the vest and fired two shots at Rolewicz and fled south across 47th Street. When the shots were fired by defendant Rolewicz fell to the ground and from his prone position he fired twice at defendant as he was fleeing. Rolewicz was uninjured by defendant's shots and after firing these two

shots he immediately got up and ran after defendant. Role-wicz did not notice what Blyth had been doing while this shooting was going on. When Rolewicz got up to the corner of 47th Street and Wells Street defendant was out of sight. Rolewicz saw Blyth turn into an alley which runs from west to east commencing at a point of Wells Street somewhat south of 47th Street. Just as Blyth was entering the alley a shot rang out and Blyth fell down. Rolewicz then saw defendant run out of the alley, jump over Blyth's body and run south on Wells Street. Up to this point Rolewicz had not fired any shots other than the two which he fired from his prone position on 47th Street. He ran after defendant and fired the four remaining shots in his gun at defendant.

The Reverend Butcher testified that after the shooting in front of his church he went inside to make a phone call and while he was there he heard more gun fire. He again went outside and saw defendant coming from 47th Street running south on the sidewalk on the east side of Wells Street. He saw defendant run into the alley and saw Blyth as he approached the alley. Butcher testified that when Blyth got to about the middle of the entrance to the alley he turned to look east down the alley. Butcher then saw a flash of gun fire coming from the alley and saw Blyth fall to the ground.

A short time later other police officers found defendant hiding in a vacant lot a short distance from the scene of the crime. When he was found he had a .380 caliber Czechoslovakian automatic in his possession. It was brought out at the trial that the gun used by officer Rolewicz on this occasion was a Smith & Wesson .38 caliber pistol which was chambered so as to shoot either regular .38 ammunition or magnum ammunition. Officer Blyth's gun was a regular Smith & Wesson .38 pistol which would only shoot standard .38 caliber ammunition. A police officer testified that he had made a search of the vicinity and had recovered

a lead pellet imbedded in a door frame in a building on the west side of Wells Street at a point about eighty-seven feet from the alley. This pellet had gone through a plate glass window and imbedded itself in the wooden frame. Expert testimony at the trial established that this pellet had been fired from defendant's gun. Four used cartridge cases were introduced in evidence at the trial and all of these were established as having been used in defendant's gun. Two of them had been found near the church, one of them on 47th Street, and one near the entrance of the alley. A lead pellet was found near the body of John Blyth but there was no testimony at the trial to show from what gun it had been fired.

In defense, defendant testified that on the night of the shooting he had been drinking in several taverns and that he was abusing his girl friend because of his intoxicated condition. He testified that at the time of the argument in front of the church one of the men grabbed his girl friend and he saw another pull a knife and it was because of these facts that he pulled his gun and fired. He further testified that after he left the church and was walking east along 47th Street he was approached by an unidentified man who drew a gun on him and that he fired at this man and then ran across 47th Street back to Wells Street and then south on Wells Street. He testified that when he got to the alley he turned east and ran through that alley to where it was joined by another and then turned south. He testified that he had been shot twice in the exchange of fire with Rolewicz and that because of his wounds he went to a vacant lot where he laid down in a semi-conscious condition and that he did not remember anything thereafter until he was taken to the hospital.

Charles M. Wilson, the Director of the Wisconsin State Crime Laboratory, testified at the trial as a court's witness. In addition to identifying the cartridges and pellets as related above, he testified that defendant's gun when fired

would emit a flash of light which might be up to twenty inches long. He compared this light to the light from a flash bulb which is almost instantaneous in duration and explained that, while the flash itself is relatively small, on a dark night it would illuminate a considerable area and could be seen for miles.

While there was other evidence at the trial, which has been carefully reviewed by us, we believe that the foregoing summary fairly presents the most significant testimony. Based upon that testimony the jury found defendant guilty. Defendant argues that it is just as likely that Blyth was accidentally killed by a shot fired by Rolewicz. In order to establish this contention defendant argues that Rolewicz's testimony that he did not fire any shots while on Wells Street until after defendant ran out of the alley is not worthy of belief because Rolewicz would naturally try to protect himself from the charge that he accidently killed his partner. Defendant also argues that the Reverend Butcher's testimony is not worthy of belief because of his testimony concerning the flash of gun fire. He argues that, since the expert testimony established that the flash from defendant's gun would only be about twenty inches long, it could not have been seen from the church corner. This argument entirely ignores the further expert testimony that such a flash from the muzzle of a gun illuminates the area and might be visible for miles. Furthermore, all of these arguments go primarily to the credibility of the State's witnesses. The jury heard all of the testimony and observed the witnesses and they were the proper persons to pass upon the credibility of the testimony. We are of the opinion that the evidence at the trial was sufficient to establish defendant's guilt beyond a reasonable doubt.

In the second assignment of error defendant alleges that the trial court erred in denying a motion for a new trial based upon newly discovered evidence. Prior to the hearing on that motion defendant's counsel stated to the

court that at the time of the trial he was not aware of the significance of certain testimony pertaining to the bullet which was found in the building across the street and the bullet which was found near Blyth's body. He stated to the court that he was prepared to show that the bullet which was found near Blyth's body could not have been fired from the defendant's gun and could have been fired from either Blyth's gun or Rolewicz's gun and that it was more likely that it had been fired by Rolewicz's gun. He also stated that he was prepared to show that the bullet which was found in the building across the street could not have been the bullet which killed Blyth, for it could not have traveled all that distance after passing through Blyth's body. The court then held a hearing on the motion, at which Charles Wilson, the expert from the Wisconsin Crime Laboratory, testified. Wilson testified that the bullet which had been found near Blyth's body could not have been fired from defendant's gun and that it could have been fired from Rolewicz's gun or from Blyth's gun although the indications were that it had been fired from Rolewicz's. He testified that in his opinion the bullet which was found in the building across the street, which had been fired from defendant's gun, could have passed through the body of the deceased and still imbedded itself in the building but that it was improbable. He also testified on cross-examination that the bullet which was found near the deceased's body did not have the appearance of a bullet that had passed through a body and that its appearance was more consistant with that of a bullet which had ricocheted from some hard substantial object such as an automobile, telephone pole, or stone curbing. Following this testimony by Wilson the court denied the motion for a new trial. We are of the opinion that the ruling of the trial judge on this motion was correct. Applications for new trials on the ground of newly discovered evidence are not regarded with favor and must be closely scrutinized. In order to justify

a new trial the newly 'discovered testimony must be conclusive and not merely cumulative, and the evidence must appear to be of such conclusive character that it will probably change the result if a new trial is granted. (*People* v. *Sylvia,* 389 Ill. 346; *People* v. *Marino,* 388 Ill. 203; *People* v. *Tillman,* 383 Ill. 560.) It is clear that the evidence relied upon here was not of such a conclusive character. Wilson was of the opinion that the bullet found near Blyth's body did not appear to have passed through a human body and also was unable to state with certainty what gun this bullet had been fired from. This testimony would have been of little assistance to the jury and affords no support for defendant's argument that Rolewicz accidently killed Blyth. Wilson's testimony with respect to the bullet which was found in the building across the street is likewise inconclusive for he admitted the possibility that this bullet, which had been fired from defendant's gun, could have been the bullet which killed Blyth.

Defendant also assigns error on the refusal of the trial court to give two instructions tendered by defendant. In one of these instructions the jury was advised that if they found from the evidence that defendant was threatened by a demonstration of officer Rolewicz in such a way as to cause him to reasonably believe that he was in danger of losing his life or suffering great bodily harm, and that he acted under the influence of such apprehension, he was justified in shooting at a person who was pursuing and shooting at him. We are of the opinion that the trial judge correctly refused to give this instruction, since there was no evidence in the record to support the theory of self-defense. Officer Rolewicz testified that he shouted at the defendant and advised him that he was a police officer and that defendant, without reply, drew his gun and shot at him. In defendant's own testimony he testified that he did not hear Rolewicz say that he was a police officer and that when he saw Rolewicz draw his gun he started to draw

his. He testified that he was trying to scare Rolewicz so that he could get away. Defendant also denied firing any shot from the alley. This testimony was insufficient to require an instruction on self-defense. The other instructions advised the jury that if the deceased was killed by a person whom he was attempting to arrest without color or authority of law the killing was manslaughter only unless the evidence shows express malice. From all of the evidence in the record there was no reasonable basis upon which the jury could have found that the officers were attempting to illegally arrest defendant and the refusal of this instruction was proper. Defendant also complains of the refusal of the trial court to give a form of verdict for manslaughter. What we have said with respect to the trial judge's refusal of the instructions disposes of this contention, for there was no evidence before the jury from which they could have reasonably found that defendant was guilty of manslaughter.

In defendant's final assignment of error he charges that Negroes were systematically excluded from the jury by the action of the State in excusing five prospective Negro jurors by the exercise of the State's right of peremptory challenge. In the recent case of *People* v. *Harris*, 17 Ill.2d 446, an identical contention was advanced. In that case we stated "The fact that the State's exercise of peremptory challenges resulted in excluding them [Negroes] from the petit jury did not deprive defendant of any constitutional right." We adhere to and reaffirm our ruling in the *Harris case*.

We have carefully considered all of the evidence in the case and the arguments of counsel and are of the opinion that defendant's guilt was established beyond a reasonable doubt and that he received a fair and impartial trial. The judgment of the criminal court of Cook County is therefore affirmed and the clerk of this court is directed to enter an order fixing Friday, September 23, 1960, as the

date on which the original sentence entered in the criminal court of Cook County shall be executed. A certified copy of the order shall be furnished by the clerk of this court to the sheriff of Cook County.

*Judgment affirmed.*