UNITED STATES of America ex rel. James DUKES, Relator-Appellant,

v.

Frank G. SAIN, Sheriff of Cook County, Illinois, Respondent-Appellee.

No. 13374.

United States Court of Appeals Seventh Circuit.

Jan. 2, 1962.

Rehearing Denied Jan. 25, 1962.

Jason Ernest Bellows, Charles A. Bellows, Chicago, Ill., for appellant.

Daniel P. Ward, State's Atty., Marvin E. Aspen, Asst. State's Atty., Chicago, Ill. (John T. Gallagher, Asst. State's Atty., Chicago, Ill., of counsel), for appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

DUFFY, Circuit Judge.

James Dukes was convicted in the Criminal Court of Cook County, Illinois, of the crime of murder. The proof showed he shot John Blyth, a Chicago police officer. The jury fixed his punishment at death. On appeal, the judgment was reversed and remanded for a new trial because of prejudicial argument by a State's Attorney. People v. Dukes, 12 Ill.2d 334, 146 N.E.2d 14, 67 A.L.R.2d 724.[1]

Dukes was again tried and again convicted and once more sentenced to death. Dukes moved for a new trial on the ground of newly discovered evidence. This motion was denied. The Supreme Court of Illinois affirmed the judgment of conviction. People v. Dukes, 19 Ill.2d 532, 169 N.E.2d 84. The Supreme Court of the United States denied a petition for certiorari, 365 U.S. 830, 81 S.Ct. 716, 5 L.Ed.2d 707. Thereafter, Dukes prosecuted a petition for post conviction relief in the Criminal Court of Cook County, Illinois. This petition was denied.

Dukes filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Illinois. After a hearing, the petition was dismissed. The District Court granted a certificate of probable cause. This Court granted Dukes leave to proceed *in forma pauperis* and to file typewritten briefs.

Dukes is a Negro. His first contention is that he was convicted without due process and was denied the equal protec-

1. The Court stated (146 N.E.2d 14, 17) "From the evidence in this case, we conclude that the jury was justified in re-turning a verdict of guilty and that the death penalty may well have been warranted."

tion of the laws by reason of the fact that at his trial the State's Attorney, through the use of peremptory challenges, excluded all persons of the Negro race from the jury which tried him, thereby denying petitioner a trial by a fair and impartial jury.

Dukes' second contention is that he was denied due process of law and equal protection of the laws because the State's Attorney challenged for cause, pursuant to Illinois statute (Ill.Rev.Stat.1959, Ch. 38, sec. 743) all persons who declared themselves to be possessed of conscientious scruples against capital punishment.

Dukes' third point was that he was denied due process of law and the equal protection of the laws in that he was tried under an Illinois statute which provided for the jury setting the punishment, whereas in a majority of prosecutions for felonies in Illinois, the Judge sets the penalty.

There also was an allegation by Dukes that he was denied due process of law in that the prosecution knowingly withheld evidence which, had it been known to the jury, would probably have caused a different result.

### USE OF PEREMPTORY CHALLENGES

On this point, petitioner commences his argument by referring to the well-established proposition stated by Chief Justice Hughes in Norris v. State of Alabama, 294 U.S. 587 at 589, 55 S.Ct. 579, 580, 79 L.Ed. 1074 (1935), as follows: "* * * Summing up precisely the effect of earlier decisions, this Court thus stated the principle in Carter v. [State of] Texas, 177 U.S. 442, 447, 20 S.Ct. 687, 44 L.Ed. 839, in relation to exclusion from service on grand juries: 'Whenever by any action of a State, * * * all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment of the Constitution of the United States'. * * * The principle

is equally applicable to a similar exclusion of Negroes from service on petit juries. * * * "

In a later case, Eubanks v. Louisiana (1957), 356 U.S. 584, 78 S.Ct. 970, 972, 2 L.Ed.2d 991, Justice Black, speaking for the Court, said at page 585: "In an unbroken line of cases stretching back almost 80 years this Court has held that a criminal defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury or tried by a petit jury from which members of his race have been excluded because of their race. * * * "

The same rule was held to apply to persons of Mexican descent in Hernandez v. Texas (1954), 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866.

There is no claim in the case at bar that Negroes were excluded from the panel from which the petit jurors were drawn. However, petitioner argues that by exercising a portion of the peremptory challenges available to him under the Illinois statutes, the State's Attorney succeeded in having an all-white jury consider the question of petitioner's guilt or innocence, and that such conduct was in violation of petitioner's constitutional rights.

Peremptory challenges have been with us for a long time. They were well known to the common law. In Pointer v. United States (1894), 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208, the Court quoted Coke, " 'The end of challenge,' * * * 'is to have an indifferent trial, and which is required by law; and to bar the party indicted of his lawful challenge is to bar him of a principal matter concerning his trial.' " The Supreme Court pointed out that a defendant could challenge a prospective juror with or without reason, and concluded, "Any system for the impaneling of a jury that presents [sic] or embarrasses the full, unrestricted exercise by the accused of that right must be condemned."

Peremptory challenges have never been regarded as a one-way street. In the case

at bar, under the Illinois Statute[2] the defendant [petitioner here] was entitled to twenty peremptory challenges. The State of Illinois was entitled to the same number. Mr. Justice Story, speaking for the Court in United States v. Marchant and Colson (1827), 12 Wheat. 480, 25 U. S. 480, 481, 6 L.Ed. 700 said: "The right of peremptory challenge is not, of itself, a right to select, but a right to reject jurors. * * *" After quoting from Blackstone, Justice Story continued: "The right, therefore, of challenge, does not necessarily draw after it the right of selection, but merely of exclusion. It enables the prisoner to say who shall not try him; but not to say who shall be the particular jurors to try him. * * *"

No case has been cited to us, and we know of none, which has upheld petitioner's contention as to peremptory challenges. Among the cases where the question was at issue are: Hall v. United States, 83 U.S.App.D.C. 166, 168 F. 2d 161, 4 A.L.R.2d 1193; People v. Harris, 17 Ill.2d 446, 161 N.E.2d 809, cert. den. 362 U.S. 928; People v. Dukes, 19 Ill.2d 532, 169 N.E.2d 84; People v. Roxborough, 307 Mich. 575, 12 N.W.2d 466, cert. den. 323 U.S. 749, 65 S.Ct. 80, 89 L. Ed. 600, reh. den. 323 U.S. 815, 65 S.Ct. 127, 89 L.Ed. 648; Com. ex. rel. Ashmon v. Banmiller, 391 Pa. 141, 137 A.2d 236, cert. den. 356 U.S. 945, 78 S.Ct. 792, 2 L. Ed.2d 820; State v. Logan, 344 Mo. 351, 126 S.W.2d 256, 122 A.L.R. 417, and Whitney v. State, 43 Tex.Crim. 197, 63 S.W. 879.

An annotation in 4 A.L.R.2d 1200, states: "The cases which have passed upon the question posed by the title [Use of peremptory challenge to exclude from jury persons belonging to a race or class] have adhered literally to the traditional concept of the nature of a peremptory challenge as absolute, and as precluding inquiry into the motives or mental attitudes of the one to whom the right is given. * * *"

■ We hold that in the case at bar, petitioner was not deprived of any of his constitutional rights because of the State's use of peremptory challenges which challenges were authorized by a statute of the State of Illinois.

CHALLENGE BECAUSE OF CONSCIENTIOUS SCRUPLES OF PROSPECTIVE JURORS AGAINST CAPITAL PUNISHMENT

Petitioner claims he was denied the equal protection of the laws in the selection of the jury. The State challenged jurors who stated upon *voir dire* that they had conscientious scruples against capital punishment or were opposed to same. Such challenge was authorized in trials of murder by an Illinois Statute.[3] Petitioner does not cite any court decisions which sustain his views but relies on some general language in Smith v. State of Texas (1940) 311 U.S. 128, 61 S. Ct. 164, 85 L.Ed. 84 and Glasser v. United States (1942) 315 U.S. 60, 62 S.Ct. 457, 472, 86 L.Ed. 680, to the effect that the jury was not "a body truly representative of the community." To this end, he cites agitation in Illinois for the abolishment of the death penalty.

This point was not raised when the jury was being selected in the Criminal Court, nor was it raised on appeal before the Illinois Supreme Court. Respondent urges that the point has been waived. We have chosen to consider same on the merits.

The Illinois Supreme Court has upheld the constitutionality of sec. 743, People v. Carpenter, 13 Ill.2d 470, 150 N.E.2d 100, cert. den. 358 U.S. 887, 79 S.Ct. 128, 3 L. Ed.2d 115; People v. Winchester, 352 Ill. 237, 185 N.E. 580; Gates v. People, 14 Ill. 433. This Court, in Carpenter v. Sain, 7 Cir., 263 F.2d 330, has acquiesced in the Illinois ruling. Other jurisdictions with similar statutory provisions have upheld the propriety of challenging a juror who has conscientious scruples against capital punishment. State v. Pinkston, 336 Mo. 614, 79 S.W.2d 1046; State v. Jefferson, 131 N.J.L. 70, 34 A.2d

2. Ill.Rev.Stat.1959, Ch. 38, § 742.

3. Ill.Rev.Stat.1959, Ch. 38, § 743.

881; People v. Hoyt, 20 Cal.2d 306, 125 P.2d 29. See also, United States v. Puff, 2 Cir., 211 F.2d 171, and discussion in 50 C.J.S. Juries § 275(e).

 We hold petitioner was not denied the equal protection of the laws or any other constitutional right because the State's Attorney challenged prospective jurors because of their conscientious scruples against the death penalty.

## ILLINOIS STATUTE PERMITTING JURY IN CERTAIN CRIMINAL CASES TO FIX THE PUNISHMENT

Petitioner insists he was denied due process and the equal protection of the laws because he was tried under an Illinois statute [4] which provided that the jury, by its verdict, would fix the punishment. This statute applies to four designated crimes, to-wit: misprision of treason, murder, voluntary manslaughter and rape or kidnapping.

At the trial, petitioner made no objection to the jury fixing his punishment. When the appeal was taken to the Illinois Supreme Court, no objection was made on this point. The Illinois Supreme Court has held the classification of offenses in sec. 801 is a reasonable one. People v. Dixon, 400 Ill. 449, 81 N.E.2d 257.

We hold that petitioner was not denied due process or the equal protection of the laws because the jury fixed the penalty.

The last point urged by petitioner is the alleged error of the Court in denying a new trial by reason of newly discovered evidence. The claim is that "Fragment B" [5] is such newly discovered evidence. When testimony as to Fragment B had been elicited, Attorney Bellows, defense counsel, asked Robert Cooney, prosecuting attorney, "Mr. Cooney, do you have those lead pellets?" and Mr. Cooney responded, "I have the fragments, reports, anything you want."

The prosecuting attorney and the trial judge were careful to protect petitioner's rights. At the request of Mr. Bellows, Mr. Charles Wilson, a ballistics expert, and Director of the Wisconsin State Crime Laboratory, was called as the Court's witness, and he was freely examined by defendant's counsel. We hold the prosecution did not knowingly suppress evidence which would tend to prove petitioner's innocence.

The order of the District Court dismissing the petition for a writ of habeas corpus is

Affirmed.

---

4. Ill.Rev.Stat.1959, ch. 38, § 801.

5. This was a fragment of a pellet found seven to twelve feet from Blyth's body.