THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES NEWSOME, Defendant-Appellant.

First District (2nd Division) No. 81—338

Opinion filed December 7, 1982.

Katz, Hirsch, Wise & Colky, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Michael J. Kelly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Defendant, James Newsome, was charged by information with three counts of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1), one count of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2), and two counts of armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2). A jury found him guilty of murder, armed robbery and armed violence. He was sentenced by the trial court to life imprisonment on one

count of murder and to a concurrent term of 30 years on one count of armed robbery.

On appeal, defendant raises the following issues: (1) whether he was denied a fair trial because the jury which convicted him was unrepresentative, prejudicial and prone to convict; (2) whether his fifth amendment rights were violated because the trial court admitted testimony impeaching him when he chose not to take the stand; (3) whether the prosecutor's closing argument was improper; (4) whether the trial court erred in the sentencing hearing; and (5) whether the sentence he received was unduly severe.

Defendant's charges stem from the murder and armed robbery of a 72-year-old grocery owner, Mickey Cohen. At defendant's trial, Josie Nash, a store employee, testified that defendant entered the store at approximately 1:45 p.m. on October 30, 1979. He selected and brought a few items to the counter which Cohen bagged. Anthony Rounds, a frequent customer, entered the store, engaged in conversation with Cohen and selected two items for purchase. Rounds testified that he saw a gun butt in defendant's shirt. Cohen picked up a gun that was under the counter, put it into his pocket and told Rounds to go outside and wait.

Nash testified that defendant then brought another item to the checkout counter which she rang up. Defendant pulled his gun and said, "Don't do it, old man." Cohen was also pulling his gun and at this point Nash ran to the cooler to hide. Cohen was shot twice in the head and neck. After hearing the shots, Rounds ran back into the store, bumping into defendant as he was exiting. The victim's pockets had been emptied and his gun was missing.

Both Nash and Rounds identified defendant in a subsequent lineup, as did another witness who saw defendant on the street at approximately the time of the murder. Although positive fingerprints were found on the various items in the store that defendant allegedly handled, tests revealed that they did not belong to the victim, defendant, or the witnesses. At trial, defendant produced three alibi witnesses who claimed that defendant was with them watching "TV" soap operas at the time in question.

The jury found defendant guilty of murder, armed robbery and armed violence. The State sought the death penalty and defendant waived his right to a jury hearing for the sentencing segment of his trial. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(d)(3).) Although the sentencing hearing commenced shortly after the end of trial, the trial judge did not hear the post-trial motions until four months later. At that time, the trial judge denied the motions and sentenced defendant

to life imprisonment on one murder count and to a concurrent term of 30 years on one armed robbery count. The judgment on the armed violence count was dismissed.

## I

Defendant claims he was denied a fair trial regarding the guilt determination segment of his trial because:

A. the jury was unrepresentative of the community since all veniremen who were opposed to the death penalty were automatically excluded;

B. the jury was inherently biased and prone to convict as a result of the automatic exclusion;

C. the State used its peremptory challenges to exclude all available jurors who were members of his race; and

D. the jury prejudged his guilt.

## A

During *voir dire*, each potential juror was asked whether he or she had any strong feelings by reason of religion or conscience against the death penalty. The juror was then asked if he could consider all possible penalties under the law and if he would automatically vote against the death penalty no matter what the facts of the case were. Defendant claims that individuals who are opposed to the death penalty constitute a "distinct group" which has "qualities of human nature and experience" unique unto themselves. Because this group was systematically excluded from the pool of potential jurors, defendant argues that the "fair-cross-section requirement" of the sixth amendment as discussed in *Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664, was violated.

According to defendant, the *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, case and its progeny left open the question of whether a "death-qualified" jury violates the requirement of a representative jury. In *Witherspoon*, the Supreme Court held that the death sentence could not be carried out if veniremen were excluded simply because of a general objection to the death penalty, but that it was proper to exclude a juror for his automatic opposition to the death penalty or his inability to fairly determine guilt. (391 U.S. 510, 522-23 n.21, 20 L. Ed. 2d 776, 785 n.21, 88 S. Ct. 1770, 1777 n.21.) Defendant contends that four jurors were disqualified even though they stated that they could adequately adjudge guilt. The record reveals, however, that in each case the juror did indicate that he or she would, or might, vote against the death penalty

automatically. We believe the jury selection satisfied the *Witherspoon* requirements and, of course, the *Witherspoon* holding is limited to those circumstances in which the death penalty is actually imposed by the jury. *Bumper v. North Carolina* (1968), 391 U.S. 543, 545, 20 L. Ed. 2d 797, 800, 88 S. Ct. 1788, 1790.

■ The sixth amendment's right to trial by a panel of "impartial" jurors has been interpreted as meaning that the State, as well as the defendant, is entitled to an impartial jury. The jury must be free from bias not only against the accused, but also for the accused. (*Spinkellink v. Wainwright* (5th Cir. 1978), 578 F.2d 582, 596; *People v. Hamilton* (1981), 100 Ill. App. 3d 942, 947-48, 427 N.E.2d 388, *appeal denied* (1982), 91 Ill. 2d 554.) Defendant's contention that the fair-cross-section requirement of the sixth and fourteenth amendments was violated is without merit.

## B

Defendant also argues that the automatic exclusion of jurors under the *Witherspoon* standard produced a jury that was inherently biased and prone to convict. Defendant presents copies of various studies which support his theory that persons not opposed to the death penalty are more prone to convict. In *Witherspoon,* the court said that the data produced in that case was "too tentative and fragmentary" and that it would not conclude that the exclusion of jurors opposed to capital punishment substantially increases the risk of conviction. (*Witherspoon v. Illinois* (1968), 391 U.S. 510, 517-18, 20 L. Ed. 2d 776, 782, 88 S. Ct. 1770, 1774.) Defendant argues that the data is now complete and is sufficient to support his contention.

Recent Illinois cases have rejected similar studies to those offered by defendant because they involve very limited numbers and small variations (*People v. Lewis* (1982), 88 Ill. 2d 129, 147, 430 N.E.2d 1346, U.S. appeal pending), or because at most all that they show is a pattern of correlation between jurors' attitudes toward the death penalty and toward conviction in a particular set of facts. (*People v. Hamilton* (1981), 100 Ill. App. 3d 942, 948; see also *Spinkellink v. Wainwright* (5th Cir. 1978), 578 F.2d 582, 593-96; *Hooks v. State* (Del. 1980), 416 A.2d 189, 195.) We likewise find the studies inconclusive. Defendant was not denied a fair trial because of the exclusion of jurors under the *Witherspoon* standard.

■ Defendant further argues that because Illinois has a bifurcated system of determining guilt and sentencing (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(d)), there is no need to death-qualify the jury before the guilt-determining stage. Defendant suggests that an additional

*voir dire* be held after a defendant has been adjudged guilty and has requested a jury determination of his sentence. This same argument was rejected in *People v. Gaines* (1981), 88 Ill. 2d 342, 358, 430 N.E.2d 1046, where the court stated that it was questionable whether there was power to adopt this type of procedure under the statute and that its adoption would pose constitutional problems. For the above reasons, defendant's contention that his conviction must be overturned because the jury was inherently biased and prone to convict fails.

## C

Defendant, a black man on trial for the murder of a white man, strenuously argues that his right to a fair trial before a representative jury was violated because the State used its peremptory challenges to exclude all available black jurors. Defendant was tried by an all-white jury.

### THE RECORD

In order to thoroughly consider this issue, we first analyze the record before us. The record includes a complete transcript of the *voir dire*. The trial judge conducted all of the questioning of the potential jurors in accordance with Supreme Court Rule 234 (73 Ill. 2d R. 234). Initially, defendant attacked the venire brought into the courtroom, noting there were only four blacks out of 40. After the trial court overruled that objection, the questioning of jurors proceeded. Thereafter, defendant made a motion for mistrial claiming the State had exercised two peremptory challenges to exclude blacks. After argument, the motion was denied. During the selection of the third panel of jurors, defendant moved for a mistrial on the basis of "the systematic exclusion of all blacks" and also challenged the venire, stating that the first two juror panels (eight persons) did not contain any blacks. After argument, the trial court denied the motions. When 12 jurors and one alternate had been selected and sworn, defendant again moved for a mistrial and identified one person excused by the State as being black. At this point defendant also pointed out that there was an all-white jury, with a black defendant, and that the State had systematically excluded blacks.

On appeal, defendant claims that the State used nine of its 13 peremptory challenges it exercised during the selection of regular jurors, and both of its challenges during selection of alternate jurors to exclude blacks. However, except for three individuals, defendant failed to identify or specify on the record the name and racial charac-

teristics of those now claimed to be within the challenged group. It is no excuse to say that because the trial court was conducting the *voir dire*, the defendant was unable to note each challenged juror's race. Trial procedures in this State permit setting forth in the record important facts, in support of motions, in order to preserve for the record the basis for the motions. See *People v. Turner* (1982), 110 Ill. App. 3d 519, for a discussion of this problem.

In an effort to overcome the record deficiency, defendant culled from the record the appropriate *voir dire* examination of those now claimed to be in the challenged class. It is suggested that by summarizing certain statistics and noting that the State made no objection to the accuracy of the statistics, defendant is justified in using this technique, in lieu of making an adequate record. Whether or not the State now has a duty to aid the defendant to reconstruct the record will be discussed later in this opinion.

As we are able to reconstruct the record, 101 prospective jurors were called into the courtroom. Of 101 jurors, defendant claims 16 were black, and that the State used nine peremptory challenges to exclude every black not excused for cause. Based on the portion of the *voir dire* included in the appendix, of the blacks so excused during regular and alternate selection, one had three close relatives who were victims of serious crimes, a second was a cashier at a food and liquor store (the crime in the case involved the murder of a store owner), a third had been a victim of a crime and had testified in court concerning the matter, and a fourth was the victim of a crime for which no one was ever charged.[1] As will be discussed later, we do not believe the record is adequate to support the burden of the defendant on this issue. (See *People v. Edwards* (1978), 74 Ill. 2d 1, 7, 383 N.E.2d 944, *cert. denied* (1979), 442 U.S. 931, 61 L. Ed. 2d 299, 99 S. Ct. 2862.) Nevertheless, we deem it appropriate to discuss the merits of defendant's contention.

### *Swain, King, Butler, Wheeler, Payne et al.*

We think this case is, and should be, controlled by *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, and the following Illinois Supreme Court cases: *People v. King* (1973), 54 Ill. 2d 291, 298, 296 N.E.2d 731; *People v. Butler* (1970), 46 Ill. 2d 162, 164-65, 263 N.E.2d 89; *People v. Dukes* (1960), 19 Ill. 2d 532, 540, 169

---

[1] It is appropriate to note that any one of the specified conditions might, of itself, cause a trial attorney to use a peremptory challenge.

N.E.2d 84; and *People v. Harris* (1959), 17 Ill. 2d 446, 450-51, 161 N.E.2d 809, *cert. denied* (1960), 362 U.S. 928, 4 L. Ed. 2d 747, 80 S. Ct. 755.[2]

*Swain* involved an Alabama black convicted of rape and sentenced to death. He challenged the proceedings on the basis that both the trial jury venire and the petit jury violated his fourteenth amendment rights, in that the State of Alabama discriminated in the selection of jurors. In the petit jury, of eight blacks on the venire, two were exempt and six were peremptorily struck by the prosecutor. With respect to the claim that the State exercised the peremptory challenges to exclude blacks from serving on petit juries, the Supreme Court found no constitutional transgression.

Justice White, writing for the majority in *Swain* (Justice Goldberg wrote a dissent in which Chief Justice Warren and Justice Douglas joined) extensively reviewed the record, the history of the peremptory challenge in this country as well as in England, and amongst other things said:

> "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. [Citations.] * * *
>
> With these considerations in mind, we cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto*, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.
>
> * * * The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to

---

[2]Many Illinois appellate court cases have heretofore followed this authority. The list of the cases are set forth in numerous cases which predate this case. It is unnecessary to repeat them here.

examination by allegations that *in the case at hand* all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it. \*\*\*" (Emphasis added.) 380 U.S. 202, 220-22, 13 L. Ed. 2d 759, 772-74, 85 S. Ct. 824, 836-37.

■ In a decision which predated *Swain, People v. Harris* (1959), 17 Ill. 2d 446, 161 N.E.2d 809, our supreme court said: "The right of peremptory challenge is a substantial one which should not be abridged or denied. It may, by its very nature, be exercised or not exercised, according to the judgment, will or caprice of the party entitled thereto, and he is not required to assign any reason therefor." (17 Ill. 2d 446, 451.) This principle was followed in *People v. Dukes* (1960), 19 Ill. 2d 532, 540, 169 N.E.2d 84. In *People v. Butler* (1970), 46 Ill. 2d 162, 164-65, 263 N.E.2d 89, our supreme court, faced with the same question as in the instant case, rejected the claim on the basis of *Swain*. It was likewise rejected in *People v. King* (1973), 54 Ill. 2d 291, 298, 296 N.E.2d 731.

In *People v. Thornhill* (1975), 31 Ill. App. 3d 779, 333 N.E.2d 8, a case involving an identical issue, we rejected defendant's claim and noted that: "A peremptory challenge is a right to challenge a certain number of jurors without showing any cause or reason, or inquiry into motives. As any trial attorney knows, a peremptory challenge is often exercised on a mere 'hunch,' and sometimes on the so-called sophisticated consideration of race, religion, nationality, employment, residence, and many other real or imaginary reasons." 31 Ill. App. 3d 779, 783.

Based on the state of the law in Illinois, as enumerated by our supreme court, we have no authority to adopt a contrary position. (*Beagley v. Andel* (1978), 58 Ill. App. 3d 588, 591, 374 N.E.2d 929, *cert. denied* (1979), 440 U.S. 917, 59 L. Ed. 2d 467, 99 S. Ct. 1235.) Even if we were disposed to do so, we do not think the defendant in this case sustained his burden of proof as set forth in *Swain*. "In short, petitioner has not laid the proper predicate for attacking the peremptory strikes as they were used in this case. Petitioner has the burden of proof and he has failed to carry it." (380 U.S. 202, 226, 13 L. Ed. 2d 759, 776, 85 S. Ct. 824, 839.) *Swain* also noted that, "purposeful discrimination may not be assumed or merely asserted. [Citations.] It must be proven." (380 U.S. 202, 205, 13 L. Ed. 2d 759, 764, 85 S. Ct. 824, 827.) We think the record presented to this court does not contain the type of proof required by the supreme court in the *Swain* decision.

Defendant strongly relies on *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, where the California court, relying on its State constitution, held that use of peremptory challenges to remove potential jurors solely on the basis of race violated the defendant's right to a jury drawn from a representative cross-section of the community. The *Wheeler* court proposed a three-prong test which, if satisfied, would allow a defendant to rebut the presumption that the State was exercising its peremptory challenges on constitutionally permissible grounds: (1) there must be as complete a record of the circumstances of the jury selection as possible; (2) it must be established that the excluded persons are members of a cognizable group within the meaning of the representative cross-section rule; and (3) there must be a strong likelihood that such persons are being challenged because of their group association rather than a specific bias. (*People v. Wheeler* (1978), 22 Cal. 3d 258, 280, 583 P.2d 748, 764, 148 Cal. Rptr. 890, 905.) If these conditions were satisfied, then the burden, the court held, would shift to the State to demonstrate that the challenges were not based on group bias alone.

Many defendants in Illinois have attempted to convince our courts that the *Wheeler* standard should be adopted in this State. In several cases, the defendants were unsuccessful because they had not preserved a sufficient record of the circumstances, and thus the first prong of *Wheeler* was not satisfied. (*E.g., People v. Turner* (1982), 110 Ill. App. 3d 519; *People v. Dixon* (1982), 105 Ill. App. 3d 340, 434 N.E.2d 369; *People v. Belton* (1982), 105 Ill. App. 3d 10, 433 N.E.2d 1119.) Other defendants failed at establishing a *prima facie* case of purposeful discrimination. (*E.g., People v. Vaughn* (1981), 100 Ill. App. 3d 1082, 427 N.E.2d 840; *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029.) Other cases have contained an explicit refusal to follow the *Wheeler* decision, saying that the proposed test is vague and uncertain and it severely limits the scope of peremptory challenges. (*E.g., People v. Lavinder* (1981), 102 Ill. App. 3d 662, 430 N.E.2d 243; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 413 N.E.2d 1330, *appeal denied* (1981), 83 Ill. 2d 571.) Another case, one which defendant cites as supportive of his position, contains an apparent agreement with the *Wheeler* reasoning and an indication that in a proper case, the court would not hesitate to reverse and remand a conviction if purposeful exclusion was shown. *People v. Smith* (1980), 91 Ill. App. 3d 523, 414 N.E.2d 1117.

The first Illinois case to adopt the *Wheeler* decision, and upon which defendant heavily relies, is *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046. There, the third division of this court held

that when it reasonably appears to the trial court[3] that the State is using peremptory challenges to solely exclude black jurors because of their race, the State has the burden of demonstrating that the exclusions were for reasons other than race.

The *Payne* decision reasoned from an excerpt of the Supreme Court in the *Swain* case that if "it would appear that the purposes of the peremptory challenge are being perverted *** the presumption protecting the prosecutor may well be overcome." (*Swain v. Alabama* (1965), 380 U.S. 202, 224, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 838.) The section of the *Swain* opinion from which this quoted language is taken, however, does not deal with defendant's contention that blacks had been excluded in his particular case, but rather that no black had ever served as a petit juror in either a criminal or civil case in that county before. Only after the Supreme Court considered the possibility that a prosecutor might have, in case after case and whatever the circumstances, excluded all blacks from the jury, did the court make the statements relied on in *Payne.* This type of factual situation is not included in the records of either *Payne* or the case at hand. Also, *Payne* did not note *Swain's* discussion regarding defendant's burden of proof.

*Payne* is not based on the fourteenth amendment equal protection claim found in the *Swain* case, but instead is grounded on the sixth amendment's fair-cross-section requirement as enunciated in *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692. *Payne* recognized that the *Taylor* decision involved the exclusion of all women during the venire selection of the jury array, but expanded *Taylor* to petit jury selection by reasoning:

> "It follows that the systematic exclusion of prospective jurors solely because of their race is equally invidious and unconstitutional at any stage of the jury selection. *** If we were to hold otherwise, the constitutional right to a jury drawn from a fair cross section of the community could be rendered a nullity through the use of peremptory challenges." (106 Ill. App. 3d 1034, 1036-37.)

The *Payne* court opined that the sixth amendment's imperative of an impartial jury must control the procedure of peremptory challenges, which is of statutory origin only. See *People v. Payne* (1982), 106 Ill.

---

[3]The *Payne* opinion (pending on appeal in our supreme court, No. 56907) sets forth no specific standard or guidelines to be followed as an aid to the trial courts or the bar. The standard could be characterized as, "I don't know how to describe it, but I know it when I see it."

App. 3d 1034, 1039-40 n.4, and Comment, *Constitutional Law—Impartial Jury—Restricting the Peremptory Challenge—People v. Wheeler*, 13 Suffolk U.L. Rev. 1082, 1089-90 n.44 (1979), for a history of the peremptory challenge as adopted from England.[4]

In a recent case issued by our court, *People v. Teague* (1982), 108 Ill. App. 3d 891, the first division declined to adopt the view expressed in *Payne*. The *Teague* court expressed concern with the effect the *Wheeler* test would have on the scope of peremptory challenges and stated that if *Payne* were to be followed, "then the peremptory challenge [would be] so effectively emasculated as to destroy its function which *Swain* and Illinois [have] recognized." (108 Ill. App. 3d 891, 897.) *Teague* also suggested that the problem be solved by the legislature. We agree with *Teague*.

The third division of our court subsequently reaffirmed its *Payne* decision in *People v. Gosberry* (1982), 109 Ill. App. 3d 674. The *Gosberry* court responded to the concern expressed in *Teague* by stating that "all that *Payne* 'effectively emasculates' is veiled State participation in racism, sexism, and religious and ethnic prejudices." (109 Ill. App. 3d 674, 679.) The *Gosberry* court also denied that it was advocating the abolition of peremptory challenges and stated that it was recognizing, as the *Swain* court did, that the trial court may control peremptory challenges when it appears that the State is exercising them in violation of defendant's constitutional rights.

■ We have recently noted in regards to the *Wheeler* theory that "[t]his court does not condone the use of peremptory challenges to exclude prospective jurors on the basis of race." (*People v. Allen* (1981), 96 Ill. App. 3d 871, 878, 422 N.E.2d 100, *appeal denied* (1981), 85 Ill. 2d 567.) In the *Allen* case, we also rejected the defendant's contention that there was a violation of either the sixth amendment or article I, section 8, of the 1970 Illinois Constitution. Our system of peremptory challenges as it currently stands would be significantly altered if the *Wheeler* test (as advocated in *Payne*) were to be adopted. (*People v. Allen* (1981) 96 Ill. App. 3d 871, 878.) "If peremptory strikes can only be exercised in a certain way, dependent on circumstances, and sub-

---

[4]*Swain* predated the 1968 decision of the Supreme Court (*Duncan v. Louisiana* (1968), 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444), which held that the sixth amendment is binding on the States through the fourteenth amendment. *Duncan* involved the right to a jury trial in a misdemeanor case. It should be noted that the *Wheeler* court did not think the sixth amendment approach would change the *Swain* result in the Supreme Court (*People v. Wheeler* (1978), 22 Cal. 3d 258, 284, 583 P.2d 748, 767, 148 Cal. Rptr. 890, 908). We do not believe the use of the sixth amendment gives *Payne* any more vitality than the fourteenth amendment gave to *Swain*.

ject to judicial scrutiny, they will no longer be peremptory." (*State v. Grady* (1979), 93 Wisc. 2d 1, 13, 286 N.W.2d 607, 612; *People v. Fleming* (1980), 91 Ill. App. 3d 99, 105, 413 N.E.2d 1330, *appeal denied* (1981), 83 Ill. 2d 571.) As recognized in *Swain*, counsel's decision to use a peremptory challenge may result from an assumption based on the limited knowledge counsel has of a potential juror's background and associations. We agree with the reasoning stated in the fourth division of this court:

> "We feel the wiser policy is to decline to interfere with counsel's right to strike a specified number of prospective jurors based on any factors he considers important, rather than to specify certain circumstances in which peremptory challenges may not be exercised, or certain factors on which they may not be based." (*People v. Lavinder* (1981), 102 Ill. App. 3d 662, 669, 430 N.E.2d 243.)

We therefore decline to hold that the State's exercise of its peremptory challenges in this instance violated defendant's constitutional rights.

## D

■ Defendant also urges that he was denied a fair trial because the jury that convicted him prejudged his guilt. He bases his contention on the *ex parte* deposition of a jury member which was taken, without an order of the trial court, four months after trial and which alleged that: during the trial the jurors decided the case and determined defendant's guilt; one juror desired to expedite deliberations; and the jury did not understand the instructions. Defendant claims that he is not impeaching the mental process of the jury, but that he is evidencing the existence of jury conduct in violation of the judge's instructions and also external influences on the jury's decision. We have examined the deposition and conclude that it does not reveal any grounds which would justify reversal of defendant's conviction. See *People v. Preston* (1979), 76 Ill. 2d 274, 287-88, 391 N.E.2d 359; *People v. Holmes* (1978), 69 Ill. 2d 507, 372 N.E.2d 656.

## II

■ Defendant, who chose not to testify at trial, next contends that the trial court erred in admitting evidence regarding statements made by him after his arrest. During the State's rebuttal, a police officer was allowed to testify about a statement defendant made on the day of his arrest which contradicted the testimony of his alibi witnesses. We conclude that this testimony was properly admitted in or-

der to test the credibility of defendant's alibi witnesses. *People v. Harvey* (1980), 92 Ill. App. 3d 465, 470, 415 N.E.2d 1161.

## III

██ Defendant claims that he was denied a fair trial because during the rebuttal argument the prosecutor misstated the facts and argued other facts not in evidence. The comments referred to testimony concerning fingerprints in the store, or lack of them. We have carefully examined the instances of alleged prosecutorial abuse and find that they do not constitute reversible error. The jury was instructed to disregard counsel's statements if not in the evidence and we cannot conclude that, based upon the record, the remarks, even if improper, resulted in substantial prejudice to defendant. *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.

## IV

Defendant raises two instances of alleged error regarding his sentencing hearing. Defendant claims that (A) improper hearsay was admitted at the hearing, and (B) the trial court erred in holding the sentencing hearing before defense counsel had a chance to prepare and present post-trial motions.

## A

After the jury found the defendant guilty of murder, armed robbery and armed violence, the State elected to seek the death penalty. This bifurcated proceeding followed the procedures set forth in sections 9—1(b), (c), (d), (e), (f) and (g) of the Criminal Code of 1961 as amended. Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b) *et seq.*

At the aggravation and mitigation phase of this hearing, the State called as a witness a deputy prosecutor from Hawaii. He testified that in 1979, he prosecuted the defendant for a controlled substance Class C felony (Hawaii) for which defendant was convicted and sentenced; that in reviewing the records of his office, he was aware of a charge against defendant of assault of a 60-year-old retired school teacher upon which defendant was convicted.

██ Defendant contends that while a sentencing hearing is not bound by the strict rules of evidence, the testimony regarding the assault conviction should not have been admitted because it was "rank hearsay." The pertinent statute under which defendant was sentenced authorizes evidence relevant to aggravating or mitigating factors "re-

gardless of its admissibility under the rules governing the admission of evidence at criminal trial." (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(e).) (*Cf. People v. La Pointe* (1982), 88 Ill. 2d 482, 494-99, 431 N.E.2d 344.) The trial court properly used its discretion in allowing the testimony regarding the assault conviction.

## B

The jury returned the guilty verdict at approximately 9 p.m. on a Friday night, and the trial court held the hearing on sentencing the following Monday morning. Defendant claims that he was prejudiced in that he was forced to make an instantaneous decision as to whether he wanted his sentence determined by a judge or jury. He further alleges that he was denied his right to a fair hearing on the post-trial motions after the judge had already heard prejudicial material presented against him during the sentencing hearing.

A review of the record reveals that at the start of the trial, defendant was aware that the State might seek the death penalty. We are satisfied from the record defendant was aware of section 9—1, the murder section of the Criminal Code of 1961. The only objection defense counsel made was at the time the hearing was scheduled and was that he would not have time to prepare written post-trial motions. The trial court then granted him leave to make oral motions. The State had made arrangements for its out-of-State witness to be present immediately after trial should defendant request a jury for the sentencing segment. The trial court repeatedly advised defense counsel that he would be given as much time as he needed to prepare and present defense witnesses. Defense counsel never requested more time and did present 10 witnesses on defendant's behalf.

The trial court did not enter judgment on the sentence until after the hearing on the post-trial motions, which was delayed several times until four months after the conclusion of the trial. A case upon which defendant relies, *People v. Carnes* (1975), 30 Ill. App. 3d 1030, 332 N.E.2d 674, is therefore not applicable because in that instance the court entered the sentence before ruling on the post-trial motions. Here, defendant had the opportunity to present his post-trial motions before sentence was imposed.

## V

Defendant lastly argues that the sentence he received was overly severe and inappropriate. A defendant may be sentenced to life imprisonment for the offense of murder if "the court finds that the

murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code *** are present." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—1.) One aggravating factor found in section 9—1 is the murder of an individual in the course of committing the felony of armed robbery. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6).) Defendant claims he was entitled to a separate hearing on whether or not this aggravating factor existed. The record reveals that the State offered into evidence at the sentencing hearing the jury verdicts finding defendant guilty of armed robbery, armed violence and murder, and a copy of defendant's birth certificate attesting to the fact that he was over the age of 18 years. These documents satisfied the statutory requirements of an aggravating factor under section 9—1(b)(6).

 █ The determination of a sentence is a matter within the trial court's discretion. It should not be altered upon review absent a showing of clear abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) The trial court stated that it considered all of the facts in the case, in the social investigation report and its supplement, and in the sentencing hearing. Contrary to defendant's contention, we find that the trial court satisfied the statutory request that it "specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to [its] sentencing determination." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1(c).) We find no reason to overturn the trial court's determination of defendant's sentence.

For the above-stated reasons, we affirm the judgment of the circuit court.

Affirmed.

STAMOS, P.J., and HARTMAN, J., concur.